**ANDREW H., a minor, by his mother, IRENE H., et al., Plaintiffs,**

v.

**Gordon M. AMBACH, individually and as Commissioner of Education of the State of New York, et al., Defendants.**

**No. 83 Civ. 9464.**

United States District Court, S.D. New York.

Jan. 23, 1984.

---

**8.** The court does not reach the question of whether plaintiff was terminated without due

process. *See* footnote 7, *supra.*

Rebell & Krieger, Michael Rebell, Arthur Block and Marion Katzive, White Plains, N.Y., for plaintiffs.

Andrea Green, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiffs have brought this action against Gordon M. Ambach, the Commissioner of Education of New York State, and Michael Finnerty, Director of the Budget of New York State.[1] Plaintiffs seek to enjoin defendants from enforcing the state's newly-adopted method of computing rates for reimbursement of private schools that teach handicapped children.[2] Defendants have moved to dismiss this action pursuant to Rule 12(b)(3) or, in the alternative, to transfer it pursuant to 28 U.S.C. § 1406(a) to the Northern District of New York on the grounds of improper venue.

### Background

Plaintiffs claim that the defendants' current system of rate-setting fails to reimburse private schools for the actual costs of educating handicapped students and thus violates the right of the handicapped under federal and state law to a free education.[3] Most of the individual plaintiffs reside in the Southern District of New York. Plaintiffs also seek the certification of a class composed of all handicapped students

---

1. Among the named plaintiffs are eight minors who require special education: Andrew H., Denise P., Becky D., Dicky D., Scott W., Katrina S., Steven Z., and Erin G. The other plaintiffs are three private schools for the handicapped (Clear View School of the Association for Mentally Ill Children of Westchester; Greenshire Residential for Retarded Children; and the Herbert G. Birch School, Inc.) and three organizations (Interagency Council of Mental Retardation and Developmental Disabilities Agencies, Inc.; New York State Council of Voluntary Family and Child Care Agencies, Inc.; and Organization to Assure Services for Exceptional Students, Inc.).

2. Plaintiffs' complaint also challenges defendants' "other unreasonable regulatory actions affecting non-public schools for handicapped children," such as alleged delays in processing appeals from rate determinations.

3. Plaintiffs allege violations of the Fourteenth Amendment; the Education for Handicapped Act, 20 U.S.C. 1401 et seq.; the Rehabilitation Act, 29 U.S.C. § 794; and state law.

affected by defendants' rate-setting methodology. Plaintiffs claim that the "largest concentration" of such students resides in the Southern District of New York.

Commissioner Ambach was the state official responsible for establishing the challenged reimbursement methodology; Budget Director Finnery approved it. Both defendants perform their official duties in Albany, New York, which is located in the state's Northern District. The Division of the Budget maintains no office outside Albany. The Department of Education has offices throughout the state, including a Manhattan office for its Division of Program Monitoring of the Office for the Education of Children with Handicapping Conditions (the "Division"). The Division has the responsibility for assuring that public and private schools for the handicapped meet the requirements of federal and state law. Staff from the Manhattan office visit the schools and review their staffing levels and other program areas. The Division staff do not suggest or in any way affect the computation of rates for tuition reimbursement.

*Discussion*

Plaintiffs assert that venue for this action is proper in the Southern District of New York under 28 U.S.C. § 1391(b) by reason of the impact of the challenged practices within the district. They further assert that the fact that the Education Department maintains an office within the district is a sufficient ground for venue here under 28 U.S.C. § 1392(a). Defendants argue that neither statute supports venue in this case.

A. *Venue Under Section 1391(b)*

Section 1391(b) states the general rule regarding venue in an action based on federal question jurisdiction:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Plaintiffs do not contend that "all defendants reside" in the Southern District; rather, they claim that the Southern District is "the judicial district ... in which the claim arose." Defendants assert that the claim arose only in the Northern District, where defendants Ambach and Finnerty adopted the challenged rate-setting methodology.

Plaintiffs concede that venue would be proper in the Northern District on this ground, but argue that a claim may arise in more than one district. In so contending, plaintiffs rely on a broad interpretation of section 1391(b) that seems at odds with the language of the statute, which supports an "inference that the draftsmen assumed that every claim arises in some *one* district." 1 Moore's Federal Practice ¶ 9.142[5.2] at 1431. The Supreme Court has stated that if venue in more than one district is ever available, it is only in "unusual" cases:

[T]he broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim.

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979) (footnote omitted).

According to *Leroy*, the language "or in which the claim arose" was inserted into section 1391(b) in 1966 simply to close a "venue gap." *Id.* at 184, 99 S.Ct. at 2717. Prior to 1966, venue under section 1391(b) was limited to that district where all the defendants resided. This limitation created an "anomalous gap in cases where multiple defendants resided in different districts and there was no proper venue despite the existence of federal jurisdiction." *Transamerica Corp. v. Transfer Planning, Inc.*, 419 F.Supp. 1261, 1263 (S.D.N.Y.1976) (cita-

tions omitted). In the present case, there is proper venue outside the district where the plaintiffs brought suit; in such circumstances, "there is no reason to read [section 1391(b)] more broadly on behalf of plaintiffs." *Leroy v. Great Western, supra,* 443 U.S. at 184, 99 S.Ct. at 2717.

■ In discounting any consideration of the plaintiffs' convenience, the Court in *Leroy* emphasized the principle that venue is the "personal privilege" of the defendant. *Id.* at 180, 99 S.Ct. at 2715. The fact that certain plaintiffs may live in the Southern District, or suffer injury there, is not determinative. Section 1391(b) looks not to the plaintiffs' residence or the place of claimed injury, but rather to the defendants' residence and the place where the "events having operative significance" for plaintiffs' claim occurred. *Lamont v. Haig,* 590 F.2d 1124, 1134 (D.C.Cir.1978); *Mida Manufacturing Co. v. Femic, Inc.,* 539 F.Supp. 159 (S.D.N.Y.1982).[4] Expressing a similar view in different words, other courts have followed a "weight of contacts" test, in which the court weighs the defendant's contacts in the various districts and deems the claim "to have arisen in the district where the contacts had been most significant." *Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 891 (S.D.N.Y.1974); *Seabrook Foods, Inc. v. Seabrook Brothers, Inc.,* 495 F.Supp. 792, 793 (S.D.N.Y.1980). Under either test, venue is proper only where, at the very least, a "substantial" part of the claim arose. *Id.*

■ In this case, defendants' contacts with the Southern District with regard to this claim are neither substantial nor significant. The events having "operative significance" for plaintiffs' claim occurred in Albany, when the defendants adopted the challenged rate-setting methodology. Plaintiffs have not established that the Division's Manhattan office played a significant role in setting or implementing the reimbursement policy that is at the heart of this case. On these facts venue is proper under section 1391(b) in the Northern District of New York alone, for the claim "arose" only there.

### B. Venue Under Section 1392(a)

Section 1392(a) provides a broader ground for multidistrict venue than section 1391(b). The section provides: "Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts. Plaintiffs rely on a two-step argument in asserting that section 1392(a) applies to the present case. First, the plaintiffs argue that the Division's Manhattan office affords a basis for finding that defendant Ambach "resides" in the Southern District as well as in the Northern District. Second, plaintiffs urge that, even though both defendants reside in the same district, they also reside in "different districts" within the meaning of section 1392(a) by virtue of Ambach's second residence in the Southern District.

■ Where, as here, public officials are sued in their official capacities, "residence" for venue purposes is where they perform their official duties. *Birnbaum v. Blum,* 546 F.Supp. 1363, 1366 (S.D.N.Y.1982). There is some authority for plaintiffs' view that when a state agency maintains a "secondary" or "satellite" office in which a significant portion of business related to the litigation is conducted, agency members may have more than one official residence. *See Buffalo Teachers Federation, Inc. v. Helsby,* 426 F.Supp. 828 (S.D.N.Y. 1976).

In two actions brought against Commissioner Ambach in his official capacity, different conclusions have been reached with regard to claims that Ambach "resided" in the Southern District of New York for ven-

---

4. This is not to suggest that a court in determining where a cause of action arose, should never consider "the place where the probable consequences of defendants' acts would be." *See Rios v. Marshall,* 530 F.Supp. 351, 368 (S.D.N.Y.

1981). However, the place of claimed injury should be considered only when the place where the defendants' "operative" acts occurred is not established. *Id.*

ue purposes. In *Procario v. Ambach,* 466 F.Supp. 452, 453 (S.D.N.Y.1979), Judge Goettel found that the Commissioner's only official residence was in the Northern District, noting that the New York City branch office of the Department of Education "conducts only a very limited amount of business ... all of which is unrelated" to the plaintiffs' claims. In *South Ogden CVS Store, Inc. v. Ambach,* 493 F.Supp. 374 (S.D.N.Y.1980), Judge Conner reached the opposite conclusion on the ground that the Department of Education conducted "at least a significant part" of litigation-related business within the Southern District.

 Relying on *South Ogden CVS,* plaintiffs allege that venue is proper since the Division of Program Monitoring in New York City conducts a significant part of the Department's business with regard to education for the handicapped. Defendants, however, have shown by undisputed affidavit that the Division does not conduct any business relating to the design and implementation of the rate-setting methodology at issue here. For this reason, the only official residence of defendant Ambach for purposes of this case is Albany.

Even if this court were to find that the Commissioner also has an official residence in New York City, venue still would not lie in this district under section 1392(a). That section applies only to civil actions "against defendants residing in *different* districts in the same state" (emphasis added).[5] The plain meaning of this language seems to preclude the application of section 1391(b) to the present case, in which both defendants reside in the Northern District. Plaintiffs cite some authority interpreting section 1392(a) to confer venue even where all defendants reside in the same district, so long as one defendant also has a residence in a different district. *See PI, Inc. v. Valcour Imprinted Papers, Inc.,* 465 F.Supp. 1218 (S.D.N.Y.1979). However, it appears that the better view, based on the language of the section and its underlying policy,[6] holds that where all defendants reside in the same district, section 1392(a) should not apply. *See Mazzella v. Stineman,* 472 F.Supp. 432, 434 (E.D.Pa.1979); 15 Wright, Miller & Cooper, Federal Practice & Procedure § 3811 at 75–76.

The court must conclude that venue does not lie in this district. In the interests of justice, this case should not be dismissed but should be transferred pursuant to 28 U.S.C. § 1406(a), to the Northern District of New York.[7]

*Conclusion*

For the forgoing reasons, defendants' motion to transfer is granted.[8] In view of the urgency for prompt disposition of the preliminary injunction motion, the Clerk of the court shall forthwith transfer the file of this case to the Clerk of the court of the Northern District of New York.

So Ordered.

---

**5.** It should be noted that the "official residence" cases cited by the parties—*Buffalo Teachers, Procario,* and *South Ogden CVS*—were decided pursuant to § 1391(a), not § 1392(a). In all the cases, the ground for venue was that "all the defendants" resided in the Southern District of New York; the courts were not faced with the claim that venue over two Northern District officials was proper because *one* of them had a branch office within the Southern District.

**6.** The "evident purpose" of section 1392(a) is to permit a plaintiff to sue multiple defendants in a single suit where otherwise he would need to bring multiple suits. *See Wright, Miller & Coo-*

*per, supra.* Given the availability of the Northern District, the present case does not pose the parties with the necessity of multiple suits.

**7.** Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**8.** In view of the transfer of this case, the court declines plaintiffs' request to consider their motion for a preliminary injunction.