BROADCASTING COMPANY OF THE CAROLINAS; Robert A. Schmid, Plaintiffs–Appellants,

v.

FLAIR BROADCASTING CORPORATION; John N. Boden; J. Timothy Harrington, Defendants–Appellees.

No. 89–2035.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1989.

Decided Dec. 27, 1989.

373

John Bowman McLeod, Lawrence M. Hunter, Jr. (Haynsworth, Marion, McKay & Guerard, Greenville, S.C., Gordon W. Hatheway, Jr., Pierson, Ball & Dowd, Washington, D.C., on brief), for plaintiffs-appellants.

Mary H. Post (Robert A. Goodsell, Irwin & Post, P.A., Roseland, N.J., Frank H. Gibbes, III, Rainey, Britton, Gibbes & Clarkson, P.A., Greenville, S.C., on brief), for defendants-appellees.

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and BRITT, Chief Judge for the District Court for the Eastern District of North Carolina, sitting by designation.

ERVIN, Chief Judge:

Plaintiffs brought this diversity suit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, claiming that, because defendants had breached a stock purchase agreement, plaintiffs were entitled to draw upon letters of credit provided by defendants as an earnest money deposit, and retain the sum of $500,000 so drawn as liquidated damages as provided in the agreement. Defendants' motion to dismiss this case on the basis of improper venue was granted by the court below, and plaintiffs now appeal that decision. Two questions are raised by this appeal: (1) Did the court below err in dismissing this action by applying the "weight of the contacts" test rather than the "substantial contacts" test in determining whether the claim arose in the district for purposes of venue under 28 U.S.C. § 1391(a); and (2) Did the defendants waive their right to object to venue because of their delay and their participation in discovery. For the reasons stated below, we believe that the "weight of the contacts" test is the appropriate test for venue under 28 U.S.C. § 1391(a), and that defendants did not waive their right to object to venue. Accordingly, we affirm the decision of the district court.

I.

Robert A. Schmid ("Schmid"), now deceased, was a resident of New York and Florida. Schmid's executors are also residents of either New York or Florida. Schmid was the sole shareholder of Broadcasting Company of the Carolinas ("Broadcasting"), which was incorporated under the laws of and maintains its principal place of business in South Carolina. Broadcasting owns WESC ("WESC"), an

AM/FM radio station located in Greenville, South Carolina.

J. Timothy Harrington ("Harrington") is a resident of New Jersey. John N. Boden ("Boden") is a resident of Connecticut. Boden and Harrington each own fifty percent of the stock in Flair Broadcasting Corporation ("Flair"), now a New Jersey corporation. At the time the complaint in this case was filed, Flair was incorporated under the laws of Delaware, and maintained its principal place of business in Connecticut. Flair was formed to acquire and operate radio broadcast stations.

On September 23, 1987, Schmid and Flair entered into a Stock Purchase Agreement (the "Agreement"), in which Schmid agreed to sell Broadcasting to Flair for approximately $14 million. Boden and Harrington are not parties to the Agreement, and Broadcasting is only a nominal party thereto. Upon execution of the Agreement, Harrington and Boden delivered to Schmid two irrevocable stand-by letters of credit totalling $500,000, which were drawn on Boden's and Harrington's accounts at their respective banks in Connecticut and New Jersey. Under the Agreement, the amount assured by the letters of credit constituted an earnest money deposit for the performance of the Agreement, and was intended to serve as liquidated damages in the event of Flair's breach. The Agreement provided that South Carolina law shall govern any dispute between the parties. All of the preliminary meetings, discussions and negotiations between the parties and their representatives with respect to the transaction, including the Agreement, occurred either in New York City or Washington, D.C. The financing for the acquisition was arranged for Flair in New York by the investment banking department at Chemical Bank. The parties intended to close the deal in New York after receiving federal regulatory approval.

## II.

Flair was unable to obtain sufficient financing to close the deal within the period expressly specified in the Agreement. As a consequence, Schmid drew down on both letters of credit. Thereafter, Flair informed Schmid that it was able to secure adequate financing for the purchase, and asked Schmid to either consummate the deal or return the $500,000 drawn from the two letters of credit. Schmid refused Flair's request and filed this action, claiming that he was entitled to retain the money as liquidated damages for Flair's breach of the Agreement. In their answer, which was filed a month and a half after the complaint, defendants objected to venue and counterclaimed for specific performance of the Agreement. Thereafter, both parties participated in limited discovery, primarily the exchange of interrogatories and the noticing of depositions. Approximately six months after the complaint was filed and four and one-half months following the answer, defendants filed a motion to dismiss this suit on the basis of improper venue under 28 U.S.C. § 1406(a). They asserted that the plaintiffs did not all reside in South Carolina, that none of the defendants resided there, and that the claim did not arise in that state. Thus, defendants argued that none of the statutory bases for venue in a diversity case, which are found in 28 U.S.C. § 1391(a), were satisfied with respect to the District of South Carolina. In his Order, Judge Anderson first acknowledged that neither all the plaintiffs nor all the defendants resided in the district. Thus, venue depended entirely on whether the claim arose in South Carolina. Applying the "weight of the contacts" test, Judge Anderson found that although "Broadcasting is a South Carolina corporation and its principal asset, radio station WESC, is located [t]here ... [a]ll of the events leading up to the Agreement and all events associated with the alleged breach occurred in or around New York City." Consequently, Judge Anderson concluded that venue did not lie in the District of South Carolina, and dismissed this action without prejudice. Plaintiffs now appeal that decision, arguing that the district court erred either because it should have applied the "substantial contacts" test in determining where a claim arises for venue purposes, or because defendants had waived their right to chal-

lenge venue because of their delay and their participation in discovery.

## III.

■ In diversity cases, venue is appropriate "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a). Prior to 1966, venue in civil actions in the federal courts depended solely on the residences of the parties. In that year, however, Congress amended section 1391, permitting venue in the judicial district where "the claim arose." *See* Act of Nov. 2, 1966, Pub.L. 89–714, 80 Stat. 1111. This change "closed a gap" which existed in the general venue statutes, providing "a proper venue even in multiple-party situations" where neither all of the plaintiffs nor all of the defendants reside in the same district. *See Burnette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 710 n. 8, 92 S.Ct.1936, 1939 n. 8, 32 L.Ed.2d 428, 431 n. 8 (1972); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3806 at 42–43 & n. 13 (2d ed. 1986). The 1966 amendment, however, fails to address the growing problem of multi-party/multi-district cases in which the residency bases for venue cannot be satisfied, and the claim arguably arose in more than one judicial district. In such cases, the courts must identify a single district where a claim arose for purposes of venue, even though venue could be appropriate in more than one district under section 1391.

The Supreme Court first confronted the multi-party/multi-district venue problem in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In construing the "claim arose" provision of section 1391(b), which is comparable to the one found in subsection (a), the Court stated:

> Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to ... give [plaintiffs] an unfettered choice among a host of different districts.... In our view,

therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

443 U.S. at 184–85, 99 S.Ct. at 2717–18, 61 L.Ed.2d at 474–75 (emphasis in the original; citations omitted). Unfortunately, this language has spawned as much uncertainty as the wording of the "claims arose" clauses themselves. As a result, the lower federal courts have developed a number of different tests to determine whether a claim arose in a particular district. Moreover, this court has not yet had the occasion to determine which of the available tests should be used in analyzing venue under section 1391.

■ Some courts have interpreted the *Leroy* decision as requiring a test that considers the "weight of the contacts" between the claim and the various districts in which venue may be appropriate. *See, e.g., Maybelline Co. v. Noxell Corp.,* 813 F.2d 901, 906–07 & n. 8 (8th Cir.1987) (construing the "claim arose" clause of § 1391(b)); *Dody v. Brown,* 659 F.Supp. 541, 550 (W.D. Mo.1987) ("After a careful examination of the language in the *Leroy* opinion, it is the conclusion of the Court that *Leroy* did not overrule those cases applying the weight of the contacts test."); *Kupcho v. Steele,* 651 F.Supp. 797, 801 (S.D.N.Y.1986) ("In determining the district in which the claim arose, courts generally look to the district where the 'weight of the contacts' or the 'events having operative significance' for plaintiffs' claim occurred."); *United States v. Douglas,* 626 F.Supp. 621, 624–25 (E.D.Va. 1985); *Canaday v. Koch,* 598 F.Supp. 1139, 1147 (E.D.N.Y.1984); *Safeco Insurance Co. of America,* 591 F.Supp. 590, 595 (D.Md.1984); *United Coal Co. v. Land Use Corp.,* 575 F.Supp. 1148, 1160 (W.D.Va.

1983) ("Apparently, the Court applied a weight of contacts analysis in *Leroy.*"); *Eaby v. Richmond,* 561 F.Supp. 131, 139–40 (E.D.Pa.1983); *Turner v. Pemberton,* 558 F.Supp. 1065, 1069 (D.S.C.1983) ("In determining where a cause of action arose, courts have generally applied the 'weight of contacts' test."); *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809, 813 (E.D.Va. 1981) ("The weight of the contacts approach requires a comparison of the defendants' contacts in the various districts involved in the case and a finding that the claim arose in the district where the contacts have been 'most significant.' "), *aff'd,* 715 F.2d 142 (4th Cir.1983), *abrogated on other grounds, Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); *see also Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 260–61 (E.D.Pa.1968) (in a pre-*Leroy* case, the court stated: "A 'weight of the contacts' test would enable venue to exist in a district where the injury occurred, if significant [activities] causing substantial injury were made to plaintiffs there by defendants."). Under the "weight of the contacts" test, venue would be proper in the district having the most significant ties to the claim. Although the Supreme Court did not expressly endorse the "weight of the contacts" test in *Leroy,* it appears that this test was applied in that case. The court considered all of the factors relating to venue, and then concluded that "the bulk of the relevant evidence and witnesses" pointed toward venue in only one of the districts. *See* 443 U.S. at 186, 99 S.Ct. at 2718, 61 L.Ed.2d at 475. At another point, the Court adjudged one factor "[l]ess important, but nonetheless relevant." *Id.*

■ If the "weight of the contacts" test may be viewed as a balancing test, then other courts have applied what may be considered a threshold test. These courts have applied the so-called "substantial contacts" test. *See, e.g., In re Nine Mile Ltd.,* 692 F.2d 56, 60 & n. 6 (8th Cir.1982) (per curiam) (construing the "claim arose" clause of § 1391(a)); *Miceli v. Stromer,* 675 F.Supp. 1559, 1564–65 (D.Colo.1987) ("The prevailing test for venue under the 'claim arising' provision of § 1391(b) is whether a substantial portion of the acts giving rise to the plaintiff's claim occurred in this district."); *Frontier Federal S & L Assn. v. National Hotel Corp.,* 675 F.Supp. 1293, 1300–01 (D.Utah 1987) (the court applied both the "substantial contacts" test and the "weight of the contacts" test); *Arandia v. Marriott Corp.,* 668 F.Supp. 452, 453 (D.Md.1987) (the "claim can be said 'with approximately equal plausibility' to have arisen in" either one of two judicial districts); *Cumis Insurance Society, Inc. v. South–Coast Bank,* 587 F.Supp. 339, 346–47 (N.D.Ind.1984) ("Equal plausibility is measured in terms of the following factors: the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant. An examination of these factors reveals that the Northern District of Indiana is at least as equally plausible a locus as the Central District of California, if not more plausible."). Under the "substantial contacts" test, venue is proper in any district in which a substantial part of the events or omissions giving rise to the claim occurred. It is the "approximately equal plausibility" language of the *Leroy* opinion which supports this test for venue. Interpreted literally, the decision states that, in a multi-party/multi-district case, a plaintiff may choose between or among any of those "districts that with approximately equal plausibility [in terms of certain enumerated factors] may be assigned as the locus of the claim." 443 U.S. at 184–85, 99 S.Ct. at 2717–18, 61 L.Ed.2d at 474–75. Indeed, there are no express requirements for balancing the contacts in the opinion.

Some courts have suggested that venue for any claim based on a breach of contract is the place of intended performance. *See, e.g., Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 842 (9th Cir. 1986) ("We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued. Furthermore, the place of performance is likely to have a close nexus to the underlying events."); *In re Nine Mile Ltd.,* 692 F.2d 56, 60 & n. 6 (8th Cir.1982) (the court applied both the "substantial contacts" test

discussed *supra* and the "place of performance" test); *American Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir.1981) ("[I]n an action for breach of contract, venue is proper at the place of performance."); *but see United States v. Douglas*, 626 F.Supp. 621, 624 (E.D.Va. 1985) (because the court applied the "weight of the contacts" test, it maintained that "neither the place of performance nor the place of contracting are dispositive as to the propriety of venue. Rather, the circumstances of the transaction as a whole must be looked at to ascertain the place or places that are so closely connected with the claim as to provide a fair and convenient trial location.").

## IV.

■ We believe that the "weight of the contacts" test is the most appropriate means for determining venue under 28 U.S.C. § 1391(a). This test best achieves the goal of protecting "the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial" by weighing all of the factors relevant to venue. *See Leroy*, 443 U.S. at 183–84, 99 S.Ct. at 2716, 61 L.Ed.2d at 474. This test also best reflects the type of balancing which the Court conducted in *Leroy*. Furthermore, the decision in *Leroy* makes it difficult for us to adopt the "substantial contacts" test when the Court itself stated that a finding of venue in more than one district would only occur in the "unusual case." *See* 443 U.S. at 185, 99 S.Ct. at 2717, 61 L.Ed.2d at 475.

■ Applying the "weight of the contacts" test to the present case, it is apparent that most of the significant events, witnesses, and records relating to the dispute either occurred or are located outside the District of South Carolina. The offer to sell was orally made and accepted in New York, the preliminary negotiations and discussions took place there, the Agreement was formed and drafted in Washington, D.C. and New York, the Agreement was executed and intended to be performed in New York, the financing, which ultimately crippled this deal, was arranged in New York, and most of the defendants, for whom the general venue statutes were intended, are residents within the greater New York metropolitan area. Based on these factors, we conclude that venue is inappropriate in the District of South Carolina.

## V.

■ Finally, we turn to plaintiffs' argument that defendants waived their right to object to venue because of their delay and their participation in discovery. Venue is a personal privilege of the defendant and may be waived. *See Leroy*, 443 U.S. at 180, 99 S.Ct. at 2715, 61 L.Ed.2d at 472; *Robert E. Lee & Co. v. Veatch*, 301 F.2d 434, 436 (4th Cir.1961), *cert. denied*, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962); 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); Fed.R.Civ.P. 12(h) ("A defense of ... improper venue ... is waived ... if it is neither made by motion under the rule nor included in a responsive pleading or an amendment thereof...."). To avoid waiving the right to challenge venue, a party must either raise an objection in the answer or move to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3). *See Queen Noor, Inc. v. McGinn*, 578 F.Supp. 218, 219 (S.D.Tex.1984) (and the cases cited therein); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3826, at 258 & n. 6 (2d ed. 1986); Fed.R.Civ.P. 12(b). In *Shaw v. United States*, 422 F.Supp. 339 (S.D.N.Y.1976), the court held that a motion to dismiss for improper venue filed thirteen months after service of the complaint, ten months after defendant's answer which alleged that venue was improper, and six months after completion of discovery was not untimely under section 1406(b) and Rule 12(h). The court reasoned that while the defendant's "delay in filing a motion to dismiss or transfer cannot be condoned, I cannot believe that the intervening period was so great and the prejudice incurred by plaintiffs was so detrimental as to require a holding that the initial objection [contained in the answer] to venue was abandoned." *Id.* at 341.

■ The rationale of the *Shaw* case is equally applicable to the present controversy. Defendants' motion to dismiss was submitted approximately six months after the complaint was filed, approximately four and one-half months after an answer was made, and while some discovery was still in progress. In addition, the answer contained a specific objection to venue. The motion to dismiss, while not filed at the earliest possible moment in this litigation was not untimely *per se*. Finally, plaintiffs allege no prejudice stemming from their participation in discovery. Consequently, the facts of this case do not support a finding of waiver by defendants.

### VI.

Because the district court applied the appropriate test for venue, and because the defendants did not waive their right to challenge venue, the decision of the lower court is hereby

AFFIRMED.