933 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NORTHERN KENTUCKY WELFARE RIGHTS ASSOCIATION, an
unincorporated non-profit organization, Michelle Rene
Asbury, and Dolores A. Flood, on their own behalf and on
behalf of all others similarly situated, Plaintiffs-Appellees,
v.
Wallace G. WILKINSON, Governor of the Commonwealth of
Kentucky, Defendant-Appellant.
 No. 90-6268.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1991.
 
 Before KRUPANSKY and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Wallace G. Wilkinson, Governor of the Commonwealth of Kentucky, appeals the summary judgment and permanent injunction granted to plaintiffs-appellees, Northern Kentucky Welfare Rights Association, Michelle Asbury, and Dolores Flood, in this class action challenging Kentucky's administration of its Low-Income Heating and Energy Assistance Program.
 
 
 2
 Although two additional defendants were named in the complaint filed in the district court, only Governor Wilkinson has appealed since he is the only named defendant appearing on the notice of appeal. J.A. at 88-89. See Minority Employees of the Tennessee Dep't of Employment Secur. Inc. v. Tennessee Dep't of Employment Secur., 901 F.2d 1327 (6th Cir.) (en banc), cert. denied, 111 S.Ct. 210 (1990), and Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988). The other named defendants in the district court were Dr. Harry Cowherd, Secretary of the Kentucky Cabinet for Human Resources, and Mike Robinson, Commissioner of the Department of Social Insurance of the Kentucky Cabinet for Human Resources.
 
 
 3
 The principal issues in this appeal are (1) whether venue was proper in the Western District of Kentucky, (2) whether plaintiffs have a private right of action under 42 U.S.C. Secs. 8621-29 (the Low-Income Home Energy Assistance Act of 1981) or 42 U.S.C. Sec. 1983, (3) whether plaintiffs were unlawfully denied benefits by Kentucky's administration of its Low-Income Home Energy Act Program in violation of 42 U.S.C. Sec. 8624(b)(5), and (4) whether this case was moot on August 30, 1990, when the district court entered summary judgment and issued its permanent injunction, and whether it is moot now. For the reasons that follow, we vacate the permanent injunction issued by the district court and remand with instructions to transfer this case to the Eastern District of Kentucky.
 
 I.
 
 4
 The Low-Income Home Energy Assistance Act of 1981 (LIHEAA), 42 U.S.C. Secs. 8621-29, is a block grant program designed to provide states with federal funds to be used to assist certain low income households in meeting their energy needs. Kentucky receives funds under LIHEAA and distributes them to its residents through its Low-Income Home Energy Act Program (LIHEAP).
 
 
 5
 Plaintiffs represent a class consisting of those Kentucky households that (a) have incomes below 110 percent of the federal poverty level and (b) do not include a person who is over sixty years of age or disabled. Plaintiffs filed this action against the defendants, all officials of the Commonwealth of Kentucky, because defendants created two components within LIHEAP, a subsidy component and a crisis component.
 
 
 6
 Approximately one-third of the $16 million the defendants received from the United States of America under the provisions of LIHEAA was allocated to the subsidy component. The subsidy component was designed to provide low income households containing elderly or disabled persons with subsidies to defray their energy costs, and only households containing elderly or disabled members could apply for the subsidies offered by this component.
 
 
 7
 The remaining two-thirds of the funds received from the United States was allocated to the crisis component of LIHEAP. Under Kentucky's plan, the funds in the crisis component were to be paid directly to community agency committees, which in turn were directed to distribute them to low income households experiencing a home heating crisis, without regard to whether or not they contained elderly or disabled members.
 
 
 8
 Plaintiffs objected to this division of LIHEAA funds into two components because, being members of a class of households without elderly or disabled members, they could not qualify for any of the funds from the subsidy component of the program. The legal theory underlying their action is that the defendants were, as a condition of receiving federal funds, required to agree with the United States to disburse those funds to their ultimate beneficiaries according to the provisions of 42 U.S.C. Sec. 8624(b)(5), which requires that each state certify to the Secretary of Health and Human Services that it agrees to
 
 
 9
 (5) provide, in a timely manner, that the highest level of assistance will be furnished to those households which have the lowest incomes and the highest energy costs in relation to income, taking into account family size....
 
 
 10
 Plaintiffs argue that this statute does not permit the splitting of funds into two components where one of those components, the subsidy component, is not accessible to plaintiffs' class members--however low their incomes might be, however high their energy costs might be, and however large their families might be--merely because their households do not contain an elderly or disabled member.
 
 
 11
 After this class action for declaratory judgment and injunction was filed in the district court for the Western District of Kentucky, defendants filed a motion under Federal Rule of Civil Procedure 12(b)(3) objecting to venue and moving the court either to dismiss the case or to transfer it to the Eastern District of Kentucky. The district court overruled the motion without an opinion. J.A. at 68. Thereafter, on December 8, 1989, the court issued a preliminary injunction ordering the defendants "to transfer to the subsidy component of the LIHEAP program funds a sum equal to that amount which has already been set aside for that fund" and enjoining defendants "from prohibiting persons other than the elderly and disabled who are in need of fuel assistance costs from filing applications for assistance in meeting their energy costs under the subsidy component of the program." J.A. at 77. The court later modified its injunction to provide that the newly constituted subsidy component it had ordered into existence would be accessible only to qualified applicants whose households do not contain elderly or handicapped members. J.A. at 82. On August 30, 1990, the district court granted summary judgment to the plaintiffs and made its preliminary injunction permanent. J.A. at 87.
 
 II.
 A.
 
 12
 Defendant first argues that the district court should have granted his motion under 28 U.S.C. Sec. 1406(a) to dismiss the case or transfer it from the Western District of Kentucky to the Eastern District of Kentucky because venue was improper in the Western District. A district court's rulings on matters of venue are reviewed for abuse of discretion. Hapaniewski v. Chicago Heights, 883 F.2d 576, 579 (7th Cir.1989), cert. denied, 110 S.Ct. 1116 (1990); Cote v. Wadel, 796 F.2d 981, 985 (7th Cir.1986); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir.1983), cert. denied, 467 U.S. 1210 (1984). Under this standard, a reviewing court will not set aside a judgment "unless it has a definite and firm conviction that the court below committed a clear error of judgment...." Balani v. Immigration and Naturalization Serv., 669 F.2d 1157, 1160 (6th Cir.1982) (per curiam).
 
 
 13
 The parties agree that venue in this case is determined by 28 U.S.C. Sec. 1391(b) which at the time this action was filed provided:
 
 
 14
 (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.
 
 
 15
 This statute contains two elements. The first, "where all defendants reside," would establish venue in the Eastern District of Kentucky under this court's holding in O'Neill v. Battisti, 472 F.2d 789 (6th Cir.1972) (per curiam), cert. denied, 411 U.S. 964 (1973). In Battisti this court held that the official residence of the justices of the Supreme Court of Ohio was the place where the justices performed their official duties, the state capital, and that 28 U.S.C. Sec. 1391(b) required that venue be in the district containing the state capital whenever state officials were sued in their official capacities. Upon finding that the justices had been sued in the wrong district, this court directed the district court to dismiss the action for lack of venue. See Andrew H. v. Ambach, 579 F.Supp. 85, 88 (S.D.N.Y.,1984); Weil v. New York State Dep't of Transp., 400 F.Supp. 1364, 1365 (S.D.N.Y.1975) (following Battisti). Since the parties agree that the official residence of all the defendants below in this action is the state capital, Frankfort, which is in the Eastern District of Kentucky, venue would be proper there and improper in the Western District under the first element of 28 U.S.C. Sec. 1391(b).
 
 
 16
 The second element of 28 U.S.C. Sec. 1391(b) provides for venue "where the claim arose." Some courts have narrowly construed section 1391(b) to allow venue in the district where the claim arose only when multiple defendants do not reside in the same judicial district; i.e., when the first element of section 1391(b) cannot be applied. Canaday v. Koch, 598 F.Supp. 1139, 1148 (E.D.N.Y.1984), aff'd, 768 F.2d 501 (2d Cir.1985); Southern Marine Research, Inc. v. Jetronic Indus., Inc., 590 F.Supp. 1192, 1194 (D.Conn.1984); Pfeiffer v. International Academy of Biomagnetic Medicine, 521 F.Supp. 1331, 1336 (W.D.Mo.1981). However, as the statute is phrased in the alternative, it is appropriate to consider "where the claim arose" in this case.
 
 
 17
 The leading case interpreting the language, "where the claim arose," is Leroy v. Great Western United Corporation, 443 U.S. 173 (1979). In Leroy, the Court was faced with deciding whether venue was proper in the Northern District of Texas or in the District of Idaho. After noting that the "first test of venue under [section 1391(b) ]--the residence of the defendants--obviously points to Idaho rather than Texas," 443 U.S. at 183, the Court went on to consider the "where the claim arose" element and held that
 
 
 18
 the broadest interpretation of the language of Sec. 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility--in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)--may be assigned as the locus of the claim.
 
 
 19
 Id., 433 U.S. at 185 (footnote omitted).
 
 
 20
 This language has been interpreted to mean that the court should use a "weight of the contacts" test to determine where the claim arose. In Broadcasting Company of the Carolinas v. Flair Broadcasting Corporation, 892 F.2d 372, 376 (4th Cir.1989), the Fourth Circuit adopted the "weight of the contacts" test, which it defined as follows:
 
 
 21
 Under the "weight of the contacts" test, venue would be proper in the district having the most significant ties to the claim. Although the Supreme Court did not expressly endorse the "weight of the contacts" test in Leroy, it appears that this test was applied in that case.
 
 
 22
 In Delong Equipment Company v. Washington Mills Abrasive Company, 840 F.2d 843, 855 (11th Cir.1988), cert. denied, 110 S.Ct. 1813 (1990), the Eleventh Circuit adopted the "weight of the contacts" test, which it defined as establishing "venue in the district where the contacts weigh most heavily."
 
 
 23
 The defendant argues that the weight of the contacts places venue in the Eastern District of Kentucky because all the defendants below officially reside there, because the seat of state government is located there, because the Kentucky program is established and operated from that district, because the records and other relevant evidence concerning the program are maintained there, and because most of the witnesses knowledgeable about the program are located in the state capital in that district. The plaintiffs argue that one of the named plaintiffs resides in the Western District of Kentucky and that, because the LIHEAP program will have a substantial impact in the Western District of Kentucky due to the large number of potential recipients in that district, venue is proper there.
 
 
 24
 We believe that the Eastern District of Kentucky has the greater weight of the contacts with the plaintiffs' claim in this case. As defendant points out, it is the place where Kentucky's government formulates its program in a series of administrative and legislative procedures. The program is coordinated, operated, and overseen from that district. It is where the assurances necessary to obtaining approval from the United States Department of Health and Human Services are given.
 
 
 25
 Plaintiffs argue that the Western District has the greater weight of contacts because the program has a substantial impact in that district. According to plaintiffs' statistics, Jefferson County, located in the Western District, has the highest number of low income households of any county in the state. This analysis, however, ignores the Supreme Court's disapproval of venue selection based only on a statute's impact.
 
 
 26
 We therefore reject the Court of Appeals' reasoning that the "claim arose" in Dallas because that is where Great Western proposed to initiate its tender offer, and that is where Idaho's statute had its impact on Great Western. Aside from the fact that these "contacts" between the "claim" and the Texas District fall far short of those connecting the claim in the Idaho District, we note that this reasoning would subject the Idaho officials to suit in almost every district in the country.
 
 
 27
 Leroy, 443 U.S. at 186 (emphasis added).
 
 
 28
 The cases relied upon by plaintiffs, Florida Nursing Home Association v. Page, 616 F.2d 1355 (5th Cir.1980), rev'd on other grounds sub nom. Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147 (1981), and Michigan State Chamber of Commerce v. Austin, 577 F.Supp. 651, rev'd on other grounds, 788 F.2d 1178 (6th Cir.1986), are inapposite because they held that venue was proper in districts in which a statute had an impact. The location of a statute's impact might be one of the factors weighed in the scales when determining "weight of the contacts," but, as is apparent from the Court's treatment of this factor in Leroy, it is not a particularly weighty consideration.
 
 
 29
 Plaintiffs also argue that this court's decision in Onderik v. Morgan, 897 F.2d 204 (6th Cir.1989), supports their position that the "substantial contacts" test is suitable for venue determinations under the "where the claim arose" component of section 1391(b). Although this court did quote Sutain v. Shapiro and Lieberman, 678 F.2d 115, 117 (9th Cir.1982), to the effect that venue was proper in "any district in which a substantial part of the acts, events or omissions occurred....," Onderik, 897 F.2d at 207, the court recognized that the Supreme Court had posited a "weight of the contacts" test in Leroy, and this court applied that test in deciding Onderik.
 
 
 30
 Even assuming arguendo that the weight of the contacts was evenly distributed to both the Eastern and Western Districts of Kentucky, the Court's decision in Leroy dictates that the proper venue in this case is in the Eastern District of Kentucky because that is the most convenient venue. When a claim can be considered as having arisen in more than one district--an "unusual case"--venue is to be selected "in terms of the availability of the witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)...." Leroy, 443 U.S. at 185. All of those factors favor the Eastern District of Kentucky, and the plaintiffs' convenience is to be ignored.
 
 
 31
 In summary, under either component of section 1391(b), venue in this case was proper only in the Eastern District of Kentucky. That is where all of the defendants below have their official residences; it is the district most convenient to the defendants; and it is the district which has the weightiest contacts with the plaintiffs' claim. Under these circumstances, we hold that the district court abused its discretion in overruling defendants' motion to dismiss or transfer this case to the Eastern District of Kentucky.
 
 B.
 
 32
 As we have determined that the Western District of Kentucky is not the proper venue, and that the proper venue is the Eastern District of Kentucky, we need not determine the other issues raised in this appeal. As the district court in the Eastern District of Kentucky to which this matter is assigned will decide the other issues in the plaintiffs' class action, we shall vacate the permanent injunction issued by the district court below.
 
 III.
 
 33
 For the reasons stated, the permanent injunction issued by the district court is VACATED, and this case is REMANDED to the district court with instructions to transfer it under 28 U.S.C. Sec. 1406(a) to the Eastern District of Kentucky.