**Ariana M. BUNTING, by her Next Friend Cheryl GRAY, Plaintiff–Appellant,**

**v.**

**Edward Joseph GRAY; Navy Federal Credit Union; Seaton M. Woodley, Defendants–Appellees,**

**Francis Tydingco–Gatewood, Individually and in her official capacity as Judge of the Superior Court of Guam, Defendant.**

No. 99–1752.

United States Court of Appeals, Sixth Circuit.

Jan. 17, 2001.

**444**

Before BATCHELDER and COLE, Circuit Judges, and GIBSON,* Circuit Judge.

BATCHELDER, Circuit Judge.

Ariana Bunting ("Ariana") appeals the order of the district court dismissing on *Younger* abstention grounds the action brought by her mother and next friend raising a variety of federal and state-law claims relating to money allegedly owed her by Edward Gray. *Younger* abstention was not proper in this case because the relevant state-court proceeding could not provide Ariana an adequate forum for her federal constitutional claims that the federal court dismissed under *Younger*. The state-court proceeding was (and remains)

inadequate because the state-court judge denied Ariana's motion to intervene in that proceeding. We reverse the judgment and remand for further proceedings consistent with this opinion.

## I. Procedural History

Cheryl Gray ("Cheryl") brought this action in the district court in Michigan, in her capacity as next friend to her minor daughter Ariana, naming as defendants Edward Gray ("Edward") (estranged husband of Cheryl and step-father of Ariana), Francis Tydingo–Gatewood (state-court judge presiding over Cheryl and Edward's divorce in Guam), the Navy Federal Credit Union (the "Credit Union"), and Seaton M. Woodley (Edward's divorce attorney). All of the allegations contained in the complaint have their genesis in the contentious divorce proceedings in Guam between Cheryl and Edward, and include claims of fraud and misrepresentation, conversion, unjust enrichment, promissory estoppel, invasion of privacy, illegal search and seizure, deprivation of the constitutional right to equal protection, deprivation of the constitutional right to due process, refusal to give full faith and credit, negligence/negligence per se, other constitutional deprivations for which redress may be sought under 42 U.S.C. § 1983, civil conspiracy, failure to prevent the deprivation of rights, exemplary damages, punitive damages, and illegal conspiracy in violation of RICO.

The district court dismissed this action with prejudice on May 21, 1999, finding that abstention under the *Younger* doctrine was appropriate. This timely appeal followed.[1]

---

* The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Only two of the named defendants filed briefs in this appeal–Judge Tydingco–Gatewood and the Credit Union. On December 20, 1999, we granted Judge Tydingco–Gatewood's motion to dismiss her as a party to the appeal on the ground that the claims against her were withdrawn in the appellant's brief.

## II.  Factual Background

Cheryl and Edward were married on January 2, 1996.  Cheryl and her two children from a prior marriage–one of whom is Ariana–moved to Guam to join Edward where he was serving in the United States Navy.  In 1997, Kyra Gray was born to Edward and Cheryl.  In January 1998, Edward filed for divorce in the Guam domestic-relations court, and a battle over the proper division of the parties' community property ensued.  In particular, the parties strongly disagreed about the ownership of certain money advanced against Edward's Mastercard account to repay funds that Edward allegedly borrowed from Ariana's college fund.  On this point, the parties' stories differ widely.

Cheryl, on behalf of Ariana, contends that early in the Grays's marriage, Edward borrowed $15,000 from Ariana's college fund to pay off his personal credit-card debt.  According to Cheryl, Edward promised to repay the loan and assured Ariana that she would never have to worry about paying for college.  The complaint alleges that Edward has repaid only $500 of the loan.

Edward claims that the Grays used "excess child-support money" paid by Cheryl's first husband to pay off the credit card debt incurred from both pre and post-nuptial purchases.  He denies there was any loan or any agreement to repay the money, and characterizes the $15,000 transferred from Ariana's account as a gift.

Several days before Edward filed his complaint for divorce, Cheryl obtained a $7,500 cash advance against Edward's Mastercard account.  Cheryl says that she had Edward's permission to obtain the advance; that she spent $2,500 of the advance on household expenses and Christmas gifts and transferred the remaining $5,000 to Ariana's college fund; and that the transfer to Ariana was made with Edward's knowledge and permission.  Edward denies he ever gave permission for the cash advance.

Because Cheryl and Edward each expressed concern that the other would hide assets that would otherwise be subject to equitable division in the divorce proceedings, the Guam domestic relations court enjoined each of them from making any subsequent transfers of community property.  The court specifically reserved until a later date the question of the propriety of the $7,500 cash advance.

On March 6, 1998, Edward moved the court for an order freezing the Credit Union accounts held in the names of Ariana Bunting and Kyra Gray, and at noon of that day, Edward's counsel notified Cheryl's attorney that an *ex parte* hearing on the issue of the credit-union accounts was scheduled for that afternoon at 3:00 p.m.  At 2:00 that afternoon, Cheryl took Ariana to the Credit Union where Ariana converted $10,000 from her college fund account into travelers' checks and sent them to her grandmother in Michigan.  At 4:30 p.m. on March 6th, unaware of Ariana's actions, the divorce court issued a restraining order.  Upon learning from an employee of the Credit Union that the funds had been removed from Ariana's account, Edward obtained an order from the divorce court requiring Cheryl to deposit the $10,000 in a trust account with the Superior Court of Guam, and Cheryl complied with that order.

The divorce court eventually held a hearing to resolve the disputes over the parties' community property and debt distribution, and on August 6, 1998, the court issued a ruling disposing of most, but not all, of the parties' respective claims.  As of the time this federal-court action was filed, the $10,000 remained in the Guam divorce-

court trust account, the divorce court had not resolved the matter of ownership of that money, and the divorce was still pending.

### III.  Analysis

#### A.  *Abstention*

■  We review *de novo* a district court's decision to abstain under the *Younger* doctrine.  *See Traughber v. Beauchane,* 760 F.2d 673, 675 (6th Cir.1985).  This doctrine, announced in the context of state criminal proceedings, *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), has been extended to state civil proceedings as well.  *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 17, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

■  The *Younger* doctrine requires federal courts to abstain in cases where the following conditions are present:

(1) state proceedings are pending;  (2) the state proceedings involve an important state interest;  and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims.

*Parker v. Commonwealth of Ky., Bd. of Dentistry,* 818 F.2d 504, 508 (6th Cir.1987).

■  In this case, the district court held that all three conditions of the *Younger* doctrine had been satisfied.  As to the first two prongs of the analysis, we agree.  The first prong is met because at the time Cheryl–on behalf of Ariana–filed the federal lawsuit, the divorce action in Guam was pending.  *See Federal Express Corp. v. Tennessee Pub. Serv. Comm'n,* 925 F.2d 962, 969 (6th Cir.1991) ("[I]f a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied.")

The second prong is satisfied because the state-court action involves an important state interest–the divorce of Cheryl

and Edward, the proper division of their marital property, and the enforcement of the divorce court's orders.  *See Kelm v. Hyatt,* 44 F.3d 415, 420 (6th Cir.1995) ("These traditional domestic-relations issues qualify as important state issues under the second element of *Younger.*").  Cheryl/Ariana argue that no important state interest is implicated by their federal lawsuit, but in the face of our decision in *Kelm,* their arguments are without merit.

The district court's abstention analysis breaks down at *Younger's* third prong.  In order for that prong to be satisfied, the state-court proceeding must present an adequate forum to allow the plaintiff an opportunity to raise her federal constitutional claims.  *See Parker,* 818 F.2d at 508.  Here, Ariana is the real party in interest in the federal lawsuit.  *See* 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1548 (2d ed.1990).  ("A guardian ad litem or next friend, on the other hand, is a nominal party only;  the ward is the real party in interest, . . .").  But she is not, and cannot be, named as a party in the divorce action in Guam;  Judge Tydingo–Gatewood denied Ariana's motion to intervene in that action.

We have not specifically considered the abstention question in this context;  the Eighth Circuit, however, held abstention improper in a case under substantially analogous facts.  *See Lannan v. Maul,* 979 F.2d 627 (8th Cir.1992).  In that case, the plaintiff's parents were divorced;  their divorce agreement required that plaintiff's father maintain term life insurance with plaintiff as the beneficiary, to substitute, in the event of his death, for the court-ordered child support;  plaintiff's father instead made his testamentary trust the beneficiary, with instructions that payments be made on plaintiff's behalf until her majority and the remainder distributed to her after she reached the age of

twenty-one. After the father died, plaintiff's mother filed on plaintiff's behalf a claim in probate court seeking proceeds of the life insurance, and the representative of the estate filed a separate state court action claiming a credit against the child support owed pursuant to the divorce agreement for social security benefits paid to plaintiff. During the pendency of both of those proceedings, plaintiff's conservator (who was not plaintiff's mother) brought suit in federal court seeking immediate payment of the insurance proceeds pursuant to the divorce agreement. The district court concluded, *inter alia,* that the issues raised were substantially related and intertwined with issues pending before state courts; the court dismissed the case. *See id.* at 629. The conservator argued that the district court erred because neither he, as conservator, nor the plaintiff was a party to the state court litigation and neither was a party to the divorce litigation between the plaintiff's parents. The Eighth Circuit held that the issue presented by the plaintiff in the federal-court action concerned a third-party-beneficiary claim rooted in contract law, which was substantially different from the only issue remaining in state court at the time of the district court's ruling, namely, whether social security payments could be credited against child-support obligations. Because the issue in the federal action was not substantially related to any pending state proceeding, the district court had erred in abstaining. *See id.* at 631; *see also LaShawn v. Kelly,* 990 F.2d 1319, 1322–23 (D.C.Cir.1993) (holding the district court did not err in refusing to abstain because there was no pending judicial proceeding that could have served as an adequate forum for plaintiffs to present their claims). We agree with *Lannan* and *LaShawn.*

Because Ariana is not (and cannot be) a party to the divorce action in Guam, we conclude that the divorce action in Guam, which is the only pending state-court proceeding, cannot provide an adequate forum for Ariana's federal constitutional claims that are alleged in her federal complaint. This is not to say that Guam's state courts could not hear those claims in some action not yet filed; they probably could. But that point is irrelevant to an analysis under *Younger*'s third prong.

When construing the scope of *Younger*'s third prong, we ask if federal constitutional claims can be brought in state-court proceedings underway when the federal complaint is filed. Here, there exists only one pending state-court action–the divorce action in Guam. And here, the state-court judge refused to allow Ariana to bring any claims–federal or otherwise–in that action. Consequently, when Ariana sued in federal court, there existed no adequate state-court forum for Ariana's federal constitutional claims, and there existed no basis on which to conclude that *Younger*'s third prong was met. *See Parker,* 818 F.2d at 508–09 (finding the third prong of *Younger* absent and holding *Younger* inapplicable).

We therefore hold that the district court erred in abstaining from exercising jurisdiction over this matter, and we reverse the district court's order of May 21, 1999. This conclusion, however, does not end our inquiry because there are additional issues presented by the parties that were raised before, but not addressed by, the district court.

B. *Domestic Relations Exception*

In this appeal, Cheryl/Ariana argue that the district court erred when it "granted dismissal under the *Younger* abstention doctrine and by implication under the 'domestic-relations-exception' doctrine ...". We have held that the domestic-relations exception applies only to suits in which "a

plaintiff positively sues in federal court for divorce, alimony or child custody." *Catz v. Chalker*, 142 F.3d 279, 292 (6th Cir.1998). Plainly, this is not such a suit. Furthermore, the district court did not rely, either explicitly or implicitly, upon the domestic-relations exception as a basis for dismissing the federal lawsuit. This argument is therefore irrelevant to the present appeal.

### C. *Venue and forum non conveniens*

Finally, the Credit Union argues here, as it did before the district court, that even if the federal courts have jurisdiction over this matter, the suit should not proceed in Michigan because venue is not proper there and the forum is not convenient. Because the district court dismissed the action on abstention grounds, it did not address these issues.

■ When federal jurisdiction is not based solely upon diversity of citizenship, venue is proper in (1) the judicial district where any defendant resides, if all defendants reside in the same state, (2) the judicial district where a substantial part of the events or omissions giving rise to the claim occurred, or (3) the judicial district where any defendant may be found, if there is no other district in which the action may be brought. *See* 28 U.S.C. § 1391(b); *see also Northern Ky. Welfare Rights Ass'n v. Wilkinson*, 933 F.2d 1009 (Table), 1991 WL 86267, at *5 (6th Cir. May 24, 1991). If venue is nonproper, the district court may, in its discretion, either dismiss the case or transfer it to any other place the case might have been brought. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *see also Parker*, 1991 WL 86267, at *5–6 (instructing district court to transfer under section 1406(a)).

Even if venue is proper, the district court still may transfer the case to a more convenient forum pursuant to the provisions of 28 U.S.C. § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute's literal language requires that the transfer would serve the convenience of the parties and witnesses, that the transfer would serve the interest of justice, and that the transferred action could have been brought in the transferee court *See* 28 U.S.C. § 1404(a); *see also Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (holding that the transferee court must have personal jurisdiction and proper venue over the action, notwithstanding the defendant's willingness to waive them, before a transfer under § 1404(a) is proper).

A decision to transfer under § 1404(a) lies within the discretion of the district court. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31–33, 75 S.Ct. 544, 99 L.Ed. 789 (1955) (holding that the district court's discretion under § 1404(a) is broader than under the common-law doctrine of *forum non conveniens*). In this case, the Credit Union argues that the only connection this suit has to Michigan is the fact that the complaint alleges that Ariana resides in Livonia, Michigan, and the $10,000 was briefly located in Michigan until it was returned to Guam pursuant to court order. Otherwise, the Credit Union contends, virtually everything related to this suit occurred in Guam: the alleged loan occurred in Guam; the Grays lived in Guam for the entire duration of their marriage; Ariana lived in Guam during the time the money allegedly was loaned and the agreement

for reimbursement allegedly was made; the divorce-court judge is sitting in Guam; the Credit Union office is located in Guam; the divorce attorney named as a defendant lives in Guam; the claimed breach of privacy by Credit Union employees occurred in Guam; and so on. While we express no opinion on whether this case should be dismissed or transferred, we remand it to the district court to address the Credit Union's claims of improper venue and *forum non conveniens.*

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's order of May 21, 1999, abstaining from the exercise of federal jurisdiction, and REMAND the case for further proceedings consistent with this opinion.