Bruce ZALMAN, Plaintiff-Appellee,

v.

David L. ARMSTRONG, individually and as Attorney General of the Commonwealth of Kentucky; Louis J. Hollenbach, III, individually and as Commonwealth Attorney for the 30th Judicial District of Kentucky; and Hon. Olga S. Peers, individually and as Judge, Jefferson Circuit Court, Eleventh Div., Defendants-Appellants.

No. 85–5174.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 21, 1986.

Decided Sept. 29, 1986.

Rehearing and Rehearing En Banc
Denied Nov. 17, 1986.

David L. Armstrong, Atty. Gen. of Kentucky, Frankfort, Ky., Robert V. Bullock (argued), for defendants-appellants.

Scott T. Wendelsdorf, Louisville, Ky., John T. Ballantine (argued), Fred R. Radolovich, Louisville, Ky., for plaintiff-appellee.

Before ENGEL, KENNEDY and RYAN, Circuit Judges.

ENGEL, Circuit Judge.

Plaintiff Bruce Zalman filed this action in the United States District Court for the Western District of Kentucky seeking injunctive relief prohibiting his prosecution under Ky.Rev.Stat. § 506.120(1)(d) [1] and declaratory relief that this statute violated his constitutional rights under the First, Sixth and Fourteenth Amendments of the United States Constitution. At the time this action was commenced in federal court, criminal proceedings were pending against Zalman under this statute in Jefferson County Circuit Court, Kentucky. The district court concluded that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), did not require federal abstention because the Kentucky statute was "patently and flagrantly" unconstitutional. The court therefore granted the requested relief, permanently enjoining prosecution under the contested provision of the statute and further declaring that provision unconstitutional. We express no opinion on the constitutionality of this statute because we find that the district court should have abstained under the principles enunciated in *Younger* and its progeny. Accordingly, we vacate the district court's judgment on the merits of the case and remand the case to the district court with instructions to dismiss the complaint.

## I.

On June 27, 1984, the grand jury of Jefferson County, Kentucky, returned an indictment against, among others who are not relevant to this action, Bruce Zalman, an attorney and citizen of Jefferson County. Count 18 of the indictment charged that Zalman "committed the offense of Criminal Syndicate when he organized or participated in organizing and provided legal services to a criminal syndicate when he facilitated the unlawful activities of the criminal syndicate by collaborating with others to promote prostitution in violation of KRS Chapter 529." The indictment returned against Zalman stemmed from Kentucky's allegations that Zalman furnished legal services and advice to the Truly Divine Massage Parlor, Joanie Darlin's Massage Parlor, and the escort services associated with those duly licensed and regulated massage parlors, knowing that prostitution occurred in the operation of each. The indictment was assigned for trial in Jefferson Circuit Court on January 29, 1985.

On December 20, 1984, Zalman brought this action in the United States District Court for the Western District of Kentucky seeking declaratory and injunctive relief on the grounds that Ky.Rev.Stat. § 506.120(1)(d) was violative of the First, Sixth and Fourteenth Amendments to the United States Constitution. Following a hearing on January 24, 1985, the district court entered a temporary restraining order enjoin-

---

**1.** Section 506.120(1)(d) provides:

(1) No person, with the purpose to establish or maintain a criminal syndicate or to facilitate any of its activities, shall do any of the following:

. . . . .

(d) Knowingly furnish legal, accounting, or other managerial services to a criminal syndicate; ....

ing further state proceedings pending a hearing on Zalman's application for a preliminary injunction. By agreement, the district court advanced and consolidated the trial of the action on the merits with the hearing on Zalman's petition for preliminary injunction. On February 21, 1985, the district court entered a final judgment declaring section 506.120(1)(d) unconstitutional and permanently enjoining the state prosecution on count 18 of the indictment.

Although the district court recognized that *Younger v. Harris* and the Anti-Injunction Act, 28 U.S.C. § 2283, would ordinarily preclude federal action on pending state criminal proceedings, the court nevertheless concluded that there were "extraordinary circumstances" warranting federal intervention. Specifically, the district court pointed to language in *Younger v. Harris* in which the Supreme Court had noted that, in addition to bad faith and harassment, "extraordinary circumstances" might exist in a situation where " 'a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). Relying heavily on *Amusement Devices Ass'n v. Ohio*, 443 F.Supp. 1040 (S.D.Ohio 1977), where a three-judge district court held a similar Ohio statute[2] to be unconstitutionally vague under the Fourteenth Amendment and violative of First Amendment associational rights, the district court concluded that Ky.Rev.Stat. § 506.120(1)(d) is "flagrantly and patently violative of express constitutional prohibitions." The court therefore refused to abstain under *Younger v. Harris* and entered judgment accordingly. The Commonwealth of Kentucky thereafter filed a timely notice of appeal to this court on February 27, 1985.[3]

## II.

*Younger v. Harris* counsels a federal court against interfering with currently pending state criminal proceedings absent a showing of extraordinary circumstances. Underlying this rule are considerations of equity, comity, and federalism. *Younger*, 401 U.S. at 43–45, 91 S.Ct. at 750–51. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, —— U.S. ——, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986). The equity component reflects "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44, 91 S.Ct. at 750. The comity component reflects "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750. Finally, the federalism component reflects a "sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and

---

**2.** This statute provided in part:

 (A) No person, with purpose to establish or maintain a criminal syndicate or to facilitate any of its activities, shall do any of the following:

 . . . . .

 (4) Furnish legal, accounting, or other managerial services to a criminal syndicate; ....

Ohio Rev.Code § 2923.04.

**3.** Subsequent to the district court's actions in this matter, and while this appeal was pending, Kentucky's Attorney General dismissed count 18 of the indictment and stated that he has no intention of prosecuting Zalman on the charge of criminal syndication. Zalman, however, was subsequently tried and acquitted on a related one-count charge of promoting prostitution in the second degree, a class D felony and lesser included offense of the original criminal syndicate charge enjoined by the district court. Zalman was also acquitted on two counts of bribing a police officer in connection with the prostitution investigation.

federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* *Younger* is thus designed to " 'permit state courts to try state cases free from interference by federal courts,' ... particularly where the party to the federal case may fully litigate his claim before the state court." *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (quoting *Younger*, 401 U.S. at 43, 91 S.Ct. at 750).

In *Younger* itself, the Supreme Court held that it was error for the district court to have enjoined Harris' prosecution in state court for an alleged violation of a state statute. The Court noted that "a proceeding was already pending in the state court, affording Harris an opportunity to raise his constitutional claims." 401 U.S. at 49, 91 S.Ct. at 753. The Court further emphasized that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it, and ... Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755. In the companion case of *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Supreme Court held that the rule announced in *Younger* with respect to injunctive relief applied with equal force to requests for declaratory relief in a federal court. Accordingly, "in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." *Id.* at 73, 91 S.Ct. at 768.

■ Thus, in determining the applicability of the *Younger* abstention rule a federal court should consider at least three separate factors: (1) whether a state proceeding is pending at the time the federal action is initiated; (2) whether an adequate opportunity is provided to raise the constitutional claims in the state proceeding; and (3) whether there are extraordinary circumstances which nevertheless warrant federal intervention.[4] We emphasize that the application of the *Younger* rule is much more than a mechanical application of these considerations. Indeed, as with any "rule of law" it is incumbent upon a court to be sensitive to the concerns which animate that rule. Guided by these concerns, we now turn to an application of the *Younger* rule to the instant facts.

### A. Pendency of the State Proceeding and Availability of a Forum.

*Younger v. Harris* and its companion cases made it quite clear that federal abstention is required only if there was a prosecution pending in state courts at the time the federal proceeding was begun. In *Younger* the Court emphasized, "We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." 401 U.S. at 41, 91 S.Ct. at 749. Similarly, in *Samuels v. Mackell*, the Court emphasized, "We, of course, express no views on the propriety of declaratory relief when no state proceeding is pending at the time the federal suit is begun." 401 U.S. at 73–74, 91 S.Ct. at 768. Later, in *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Supreme Court held that "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the

---

**4.** Since the *Younger* rule has been expanded to include certain kinds of pending state proceedings that are civil in nature it will be necessary, in some cases, to consider also the nature of the proceeding. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Since the instant case involves a criminal proceeding, it is unnecessary to consider this issue.

principles of *Younger v. Harris* should apply in full force." 422 U.S. at 349, 95 S.Ct. at 2292. Since the rule in *Younger v. Harris* is designed "to permit state courts to try state cases free from interference by federal courts," *Younger*, 401 U.S. at 43, 91 S.Ct. at 750, the Court emphasized that any other conclusion would "trivialize the principles of *Younger v. Harris.*" 422 U.S. at 350, 95 S.Ct. at 2292.

In the instant case, it is undisputed that at the time Zalman initiated his federal action, and at the time a hearing was held on the merits, a criminal prosecution was pending against Zalman in state court. Zalman suggests, however, that because the challenged state prosecution was dismissed after the district court had rendered a final decision but prior to this appeal, *Younger* abstention does not apply because there is no longer any state court proceeding to enjoin.[5]

We disagree. In our view, the principles underlying *Younger* require that the initial frame of reference for abstention purposes be determined at the time that the federal complaint is filed, or at the very latest, at the time a hearing is held on the merits in federal court. Any other rule would, in many cases, permit a district court to directly interfere in an ongoing state proceeding and yet preclude a review of the propriety of that interference by an appellate court.

We note, moreover, that our conclusion is not without support. In *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), a state criminal prosecution was pending against the defendant at the time he initiated suit in federal court challenging the constitutionality of a local ordinance under which he was being prosecuted. Prior to the federal court hearing,

however, the local authorities entered a *nolle prosequi* in the state court on the two informations charging violation of the ordinance. Although the Court ultimately found itself without jurisdiction to review the propriety of the district court's order granting a declaratory judgment against the ordinance, the Court nevertheless suggested that declaratory relief was inappropriate in the absence of a showing "that appellees would suffer irreparable injury of the kind necessary to justify federal injunctive interference with the state criminal processes." 401 U.S. at 86 n. 2, 91 S.Ct. at 677 n. 2.

In an opinion concurring in part and dissenting in part, Justice Brennan vigorously attacked this suggestion. He believed that "[t]he availability of declaratory relief was correctly regarded to depend upon the situation *at the time of the hearing* and not upon the situation when the federal suit was initiated." 401 U.S. at 103, 91 S.Ct. at 686 (emphasis added). As Justice Brennan explained:

> The key predicate to answering the question whether a federal court should stay its hand, is whether there is a pending state prosecution where the federal court plaintiff may have his constitutional defenses heard and determined. Ordinarily, that question may be answered merely by examining the dates upon which the federal and state actions were filed. If the state prosecution was first filed and if it provides an adequate forum for the adjudication of constitutional rights, the federal court should not ordinarily intervene. When, however, as here, at the time of the federal hearing there is no state prosecution to which the federal court plaintiff may be relegated for ·the

---

5. Zalman also argues that because the challenged state proceeding in question was dismissed and will not be revived, the issue of whether the district court erred in enjoining the state proceedings is moot and therefore should not be decided by this court. Even if the permanent injunction issue is moot, it does not necessarily follow that the declaratory judgment issue is likewise moot. *See Meltzer v. Board of Public Instruction,* 548 F.2d 559 (5th Cir.1977);

*Familias Unidas v. Briscoe,* 544 F.2d 182 (5th Cir.1976). In any event, we find it unnecessary to address these issues because of our conclusion that the district court should have abstained in the first instance. Moreover, in the event that plaintiff should decide to recommence this action, if still available, we believe that the district court should have the opportunity to address these issues in the first instance.

assertion of his constitutional defenses, the primary reason for refusing intervention is absent. Here, there was no other forum for the adjudication of appellees' constitutional objections to the ordinance. *Id.* at 103–04, 91 S.Ct. at 686. *See also Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 1223–24, 39 L.Ed.2d 505 (1974) ("[F]ederal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied.") (footnote omitted).

Even more in point is *DeSpain v. Johnston,* 731 F.2d 1171 (5th Cir.1984). In that case, plaintiffs were being investigated for child abuse pursuant to procedures set out by a state statute. When plaintiffs refused to cooperate in the investigation, an *ex parte* order from a county court was obtained directing plaintiffs to cooperate with the investigation. Plaintiffs continued to refuse to cooperate with the local authorities and then sought and obtained an *ex parte* temporary restraining order from a federal district court which enjoined the enforcement of the state court order requiring plaintiffs to cooperate. Defendants then sought a non-*ex parte* order from the state court. The federal district court thereafter extended the temporary restraining order pending a hearing on the merits in the state court. A hearing on the merits was then held in federal district court after the state court denied defendants' request for a second order to cooperate. Pursuant to this hearing, the district court found that the procedures utilized to investigate child abuse violated plaintiffs' right to privacy. In reaching this conclusion, the district court stated that it had " 'properly abstained from examining the

merits ... while the state court proceeding was pending,' but that the case was properly before the federal court after the state court proceeding had concluded." 731 F.2d at 1175. On appeal, the Fifth Circuit reversed, holding that the "district court should have abstained in the first instance when [plaintiffs] sought a temporary restraining order." *Id.*

In reaching this conclusion, the court explained:

The principal flaw in the district court's analysis regarding abstention was it [sic] focus on the time at which it addressed the merits of the case before it. The initial frame of reference for abstention purposes is the time that the federal complaint is filed. If a state action is pending at this time, the federal action must be dismissed. Only when no state proceeding is pending at the time that the federal action is filed is it necessary for the district court to reconsider the abstention issue before taking any action of substance on the merits. *Hicks v. Miranda,* 1975, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223. At the time [plaintiffs] filed the federal complaint requesting injunctive relief and the district court issued the temporary restraining order, a state proceeding was *ongoing* within the meaning of *Younger.*

*Id.* at 1178 (emphasis in original) (footnote omitted).[6]

■■■■ We agree that the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed. If a criminal prosecution is pending in state court at this time, *Younger* requires federal noninterference, unless extraordinary circumstances are otherwise found to exist. Here, of course, a criminal prosecution was pending

---

6. The Fifth Circuit further noted that "[t]he courts and the commentators uniformly accept this principle":

 In *Jones v. Wade,* 5 Cir.1973, 479 F.2d 1176, this Court stated that "pendency is determined *at the time that the federal complaint is filed."* *Id.* at 1181 n. 6 (emphasis added). The Sixth Circuit adopted the same approach in *Armour*

*& Co. v. Ball,* 6 Cir.1972, 468 F.2d 76. "Reasonably read, 'a pending state proceeding' means a proceeding under state law that is pending *when a complaint is filed in federal court* seeking declaratory or injunctive relief from the application of that state law." *Id.* at 79 (emphasis added).

731 F.2d at 1178–79.

both at the time the federal action was commenced and at the time a final decision was entered on the merits permanently enjoining any further prosecution and declaring a portion of the Kentucky statute unconstitutional. Zalman plainly had an adequate opportunity to have his constitutional defenses heard and determined during the course of the state court proceedings.[7] The district court, however, effectively terminated these proceedings when it issued the permanent injunction and declaratory judgment. We believe this kind of intrusion is directly contrary to the rule in *Younger v. Harris*, which is designed to " 'permit state courts to try state cases free from interference by federal courts,' 401 U.S. at 43, 91 S.Ct. at 750, particularly where the party to the federal case may fully litigate his claim before the state court." *Hicks*, 422 U.S. at 349, 95 S.Ct. at 2292. For purposes of *Younger*, moreover, we find it unimportant that the state later dismisses the indictment or information which forms the basis of the federal complaint. Here, the state was simply doing that which was required by the district court's permanent injunction and declaratory judgment. We therefore refuse to hold that the federal interference which brought about a termination of the state proceedings now precludes the state from challenging the propriety of that interference on appeal.

B. *Existence of Extraordinary Circumstances.*

 Since a criminal proceeding was pending in state court at the time this federal action was initiated, and because Zalman had an opportunity to have his constitutional defenses raised and heard during this proceeding, the district court should have abstained and dismissed the action unless it found that one of the limited exceptions to *Younger* applied. *Younger*, of course, does not require federal abstention when the state court proceeding is brought in bad faith or with the purpose of harassing the federal plaintiff. *Younger*, 401 U.S. at 49, 91 S.Ct. at 753. These exceptions to *Younger* have been narrowly construed[8] and, in fact, the district court neither found, nor is it claimed, that the state proceeding here was brought in bad faith or with a purpose to harass Zalman. Instead, the district court found that there were extraordinary circumstances because the challenged portion of the statute is

"flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."

*Id.* at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). This exception, however, appears to be even more narrow than the bad faith or harassment exception; the Supreme Court has never found it to be applicable since it first announced the exception in *Younger*. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

---

**7.** Indeed, shortly after the indictments were returned Zalman filed a motion to dismiss on grounds of unconstitutionality. The state trial court overruled this motion and the case was set for trial. Zalman then commenced this action in federal court. In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975), however, the Supreme Court held that "a necessary concomitant of *Younger* is that a party ... must exhaust his state appellate remedies before seeking relief in the District Court."

We note, moreover, that Kentucky provides a procedure whereby a plaintiff may obtain a declaration of his rights if an actual controversy exists. Ky.Rev.Stat. § 418.040.

**8.** According to one commentator: "Although later Supreme Court decisions have not shed a great deal of additional light on the exceptions to *Younger*, what the Court has done confirms that the Court is right when it describes them as 'these narrow exceptions.' " 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4255 (1978 & Supp.1986). Most recently, the Court has reemphasized the rarity of these exceptions, noting that *Younger* applies "except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 106 S.Ct. at 2723.

*Younger* itself illustrates the narrowness of the "flagrantly and patently violative ... in every clause ... and in whatever manner and against whomever" exception. In that case, the federal plaintiff could not bring himself within the exception even though the statute under which he was indicted had been effectively invalidated in *Brandenburg v. Ohio*, 395 U.S. 444, 447–49, 89 S.Ct. 1827, 1829–31, 23 L.Ed.2d 430 (1969), as the Court itself acknowledged. *Younger*, 401 U.S. at 40–41, 91 S.Ct. at 748–49. In *Trainor v. Hernandez*, moreover, Justice Stevens and three other dissenters believed that the majority had effectively eliminated this exception to *Younger*. 431 U.S. at 463, 97 S.Ct. at 1928.

It is unnecessary for us to determine whether in fact this exception has been eliminated because we conclude that it is inapplicable to the facts of this case in any event. The only basis for the district court's application of that exception in this case was a decision by a three-judge district court in the Southern District of Ohio which found a similar Ohio statute unconstitutional as impermissibly overbroad and thus violative of the First and Fourteenth Amendments. *See Amusement Devices Ass'n v. Ohio*, 443 F.Supp. 1040 (S.D.Ohio 1977). We note, however, that there are important differences between the two cases. Whereas the Ohio statute, Ohio Rev.Code § 2923.04(A)(4) provides: "(4) Furnish legal, accounting, or other managerial services to a criminal syndicate," the comparable Kentucky section, Ky.Rev.Stat. § 506.120(1)(d), provides: "*Knowingly* furnish legal, accounting, or other managerial services to a criminal syndicate." (Emphasis added). Further, the plaintiff in the

Ohio case, Amusement Devices Association, was described as an unincorporated association which "assists its members in understanding and complying with the valid laws and regulations which govern the distribution and operation of amusement devices. The Association provides a variety of legal services for its members, including, but not limited to retaining attorneys to monitor current legal developments and to represent the interests of the association and its members in litigation." 443 F.Supp. at 1043. The Ohio plaintiff, Amusement Devices, was not named as a defendant in criminal proceedings under the comparable Ohio statute, but the presidents of two of its members were indicted and charged with violations of Ohio's Act. Here, plaintiff was an attorney who was directly charged with violations of the comparable Kentucky statute. In pointing out the Ohio decision and the cited differences, we do not suggest whether such differences should or do work a difference in result, but we are not altogether convinced that a Kentucky court could not provide a limiting construction to its statute in a manner which might avoid the constitutional infirmities found in the Ohio statute.[9] In any event, we believe that principles of equity, comity and federalism require that the Kentucky courts be allowed to address the issue in the first instance free from federal interference.

We therefore conclude that the principles underlying *Younger* mandated abstention in this case. Because we find that the district court should have abstained from taking any action on Zalman's complaint, we do not reach the substantive issues.[10]

---

**9.** *Cf. Ward v. Illinois*, 431 U.S. 767, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977), where the Supreme Court found, in a somewhat different context, that the state court had "authoritatively construed" an otherwise potentially defective statute to comply with constitutional requirements. *See also Turoso v. Cleveland Mun. Court*, 674 F.2d 486, 488 (6th Cir.1982); *Sovereign News Co. v. Falke*, 674 F.2d 484 (6th Cir.1982).

**10.** We had originally requested the parties to submit supplemental briefing on whether the constitutionality of Ky.Rev.Stat. § 506.120(1)(d)

should be certified to the Kentucky Supreme Court pursuant to Rule 76.37 of the Kentucky Rules of Civil Procedure. Our further reflection on the *Younger* doctrine, however, has convinced us that if the district court should have abstained we likewise should abstain from taking any further action, including any attempt on our part to seek certification. In addition, even if we assume that all of the issues are not entirely moot, we believe that the current posture of this case makes it highly unlikely that the Supreme Court of Kentucky would accept certification.

The judgment of the district court is VACATED, and the case is REMANDED with instructions to dismiss the complaint.[11]

---

**11.** *Younger* abstention requires dismissal of the complaint rather than retention of jurisdiction as is the case under *Pullman* abstention. *See Juidice v. Vail,* 430 U.S. 327, 347, 97 S.Ct. 1211, 1223, 51 L.Ed.2d 376 (1977) (Stewart, J., dissenting); *DeSpain v. Johnston,* 731 F.2d 1171, 1179 (5th Cir.1984).