**Russell A. KELM, Plaintiff–Appellant,**

v.

**C. HYATT, et al., Defendants–Appellees.**

No. 93–3141.

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1994.

Decided Jan. 18, 1995.

Russell A. Kelm (argued and briefed), Schwartz, Kelm, Warren & Rubenstein, Mark S. Coco (argued and briefed), Harris, McClellan, Binau & Cox, Columbus, OH, for plaintiff-appellant.

Glenn B. Redick (briefed), City Attorney's Office for the City of Columbus, Harland H. Hale (argued and briefed), Carol Johnson King (argued and briefed), Columbus, OH, for defendants-appellees.

Elaine O. Zingg (briefed), Legal Aid Soc. of Columbus, Columbus, OH, for Legal Aid Soc. of Columbus, amicus curiae.

Before: KEITH and BATCHELDER, Circuit Judges; and JOINER, District Judge.*

KEITH, J., delivered the opinion of the court, in which JOINER, D.J., joined. BATCHELDER, J. (pp. 422–26), delivered a separate opinion concurring in part and dissenting in part.

KEITH, Circuit Judge.

Appellant Russell A. Kelm ("Kelm") appeals the district court's dismissal of his complaint on abstention grounds and the denial of bilateral class certification in his action challenging the constitutionality of two Ohio statutes. For the reasons stated below, we **AFFIRM** the district court's dismissal of Kelm's claims for injunctive relief on abstention grounds, and *sua sponte* dismiss Kelm's claim for monetary damages for failure to state a claim. We decline to reach the mer-

---

* The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

its of Kelm's constitutional challenges or the denial of class certification.

## I. Facts

In January 1990, Kelm sued his wife, Appellee Amy Kelm, for divorce in an Ohio domestic relations court. Neither party is fond of the other. In fact, Kelm characterizes his wife as suffering from both PMS and a manic depressive disorder and engaging in violence in "28 day intervals." Conversely, Amy Kelm denies any psychoses, and instead recounts the history of Kelm's domestic violence against her.

Over the course of the divorce proceedings, Amy Kelm obtained three temporary restraining orders pursuant to Ohio Rule of Civil Procedure 75(H) ("Rule 75(H)").[1] Rule 75(H) allows both parties in a divorce proceeding to restrain the other from disposing of assets subject to division within a pending divorce case. Kelm similarly obtained a Rule 75(H) restraining order against Amy Kelm.

Although Rule 75(H) authorizes the issuance of restraining orders without a hearing, either party may request amendment of the orders at any time. In fact, Kelm filed a motion to modify the first restraining order which was denied in June 1990. In May 1991, Kelm sought and obtained modification of the second restraining order. At an October 1991 hearing, a domestic relations judge offered Kelm an opportunity to request further modification of the orders but Kelm refused.

Amy Kelm alleges Russell Kelm physically attacked and injured her shortly after he filed for divorce, and that she escaped the attack and sought treatment at local hospital. On April 12, 1990, she sought and obtained a Civil Protection Order ("CPO") against her husband from the domestic relations court pursuant to Ohio Revised Code § 3113.31.

On April 12, 1990, Russell Kelm sought and obtained a restraining order against Amy Kelm. Russell Kelm's order restrained Amy Kelm from physically attacking him and from destroying any of his personal or real property. The restraining order was obtained based on the same incident Amy Kelm used to obtain her CPO against Russell Kelm.

Section 3113.31 enables victims of domestic violence to receive an *ex parte* civil protection order by filing a petition detailing: (1) the "nature and extent of the domestic violence"; (2) the relationship between the respondent, the petitioner, and the victim; and (3) the relief requested. Ohio Rev.Code Ann. § 3113.31(C) (Anderson 1992).[2] The *ex parte* orders often grant exclusive possession of the residence and household furniture to the petitioner.

Upon a request for an *ex parte* order, the domestic relations court must hold an *ex parte* hearing the day the petition is filed. Where the petitioner shows good cause,[3] the court may order any relief permitted under § 3114.31(E) necessary to protect the family or household member against domestic violence.[4] Where the *ex parte* order removes the respondent from and/or grants exclusive use of the residence to the petitioner, the court must schedule a full hearing to be held within seven days of the *ex parte* hearing.[5]

---

1. The first order, issued in January 1990, prohibited Kelm from disposing of the parties' property. The second order, issued in April 1991, precluded Kelm's law firm from distributing certain assets to him. The last order, dated June 1991, prohibited Kelm's stock brokerage firm from distributing assets to him.

2. Ohio created a parallel criminal procedure at the time it passed § 3113.31. *See* Ohio Rev.Code Ann. § 2919.25, *et seq.* (Anderson 1992).

3. Immediate and present danger of domestic violence constitutes good cause. *See* Ohio Rev.Code Ann. § 3113.31(D) (Anderson 1992).

4. Included in the available relief are: orders to refrain from further abuse; orders requiring respondent to leave the marital residence and not to return; orders granting temporary custody, visitation, and financial support; orders requiring counseling; and orders permitting petitioner to use a motor vehicle, household goods, and furnishings, etc. No order or agreement pursuant to this statute can affect title to any real property. Ohio Rev.Code Ann. § 3113.31(E)(4) (Anderson 1992).

5. If exclusive use is not granted to the petitioner, but other relief is granted, the full hearing shall be held within ten days of the *ex parte* hearing.

Respondent must be given notice of the full hearing and an opportunity to be heard.

The statute authorizes any officer of a law enforcement agency to enforce the provisions of the protection order. Enforcement includes the power to remove the respondent from the premises where appropriate. Ohio Rev.Code Ann. § 3113.31(F)(3) (Anderson 1992). The duration of any *ex parte* order is limited to one year from the date of its issuance.

On April 12, 1990, after seeing Amy Kelm and hearing her testimony, the court found "good cause" and issued a CPO requiring that Kelm refrain from further violence and vacate the marital residence. The court scheduled a full hearing for April 19, 1990. On that day, Kelm and Amy Kelm entered into a handwritten agreement settling the domestic violence case. Pursuant to the agreement, Amy Kelm withdrew her CPO petition and agreed not to file for a new CPO based on this incident. The agreement also allowed Amy Kelm and the children to live in the marital home, granted temporary custody of the children to Amy Kelm, and provided for visitation and child support. This agreement was entered as a temporary order in the pending divorce.

Subsequently, Kelm attempted to modify or set aside the agreement. First, he unsuccessfully tried to negotiate changes with Amy Kelm's attorney. Next, alleging coercion, he filed a motion to vacate the agreement. Kelm then filed a notice of appeal in the pending divorce proceeding in the Tenth District Court of Appeals alleging, among other things, the unconstitutionality of the statutory scheme granting relief to victims of domestic violence. The court dismissed Kelm's appeal finding he had appealed the wrong order and that the appeal within the pending proceeding was not a final appealable order. In 1992, Kelm again appealed the propriety of Ohio's CPO statute. In 1993, the court found the issues raised by Kelm moot and dismissed his appeal.

In October 1991, Kelm filed a six count class action complaint in the United States District Court for the Southern District of Ohio against several Columbus Police Officers: C. Hyatt, A. Litchfield, D. Kaylor, B. Moose, E. Moore, R. Moore and D. Follmar. He also filed suit against Deputy Sheriff Sharon Weber, court clerk Barbara Parkhurst, and Amy Kelm. The aforementioned are the Appellees in the instant case. Counts I and II alleged the unconstitutionality of § 3113.31 and Rule 75(H) and sought injunctive relief pursuant to 42 U.S.C. § 1983. Counts III and IV sought damages alleging the service and execution of the CPO denied him due process of law in violation of 42 U.S.C. § 1983. Counts V and VI challenged the validity of an antenuptial agreement between Kelm and his wife.

In April 1992, Kelm sought certification of a bilateral class action. The plaintiff class included all persons in Ohio who are or will be subject to civil protection orders and/or temporary restraining orders. The defendant class included all police officers, sheriff deputies, and non-judicial court personnel charged with enforcing the protective and restraining orders.

In September 1992, the district court denied class certification. Subsequently, Kelm voluntarily withdrew count III and agreed to hold counts V and VI in abeyance. Additionally, Kelm specifically noted that defendants Weber and Parkhurst were not included within the scope of his remaining claim for damages. (JA pp. 80–82) Thus, Kelm's remaining counts before the district court sought: (1) injunctive relief, individually and for the class, alleging the two Ohio procedures, as written, denied plaintiffs due process of law; and (2) damages as an individual pursuant to 42 U.S.C. § 1983 alleging the service and execution of the CPO deprived him of liberty and property without due process of law. All defendants filed separate motions to dismiss.

In December 1992, the district court granted Amy Kelm's Rule 12(b)(6) motion to dismiss on abstention grounds delineated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This timely appeal followed.

## II. Discussion

On appeal Kelm argues:

(1) the district court improperly dismissed the case on abstention grounds;

(2) the Rule 75(H) and the Civil Protection Order procedures "violate fundamental Due Process"; and

(3) the district court abused its discretion by denying bilateral class certification.

Because we find that the district court properly dismissed Kelm's claims for injunctive relief on abstention grounds, we do not reach the denial of class certification. Additionally, we decline to rule on the constitutionality of the Ohio statutes at issue. Although abstention was improper on Kelm's damages claim, we *sua sponte* dismiss his claim for damages because Kelm failed to state a viable claim. We discuss each holding below.

### A. *Younger* Abstention was Proper

First, Kelm argues that the district court erred by dismissing his claims for injunctive relief on abstention grounds as enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Kelm argues abstention is inappropriate for his "civil rights challenge" to two Ohio domestic relations provisions. He alleges the district court erred by abstaining because the challenged procedures are pre-judgment and his claims do not affect the merits of the underlying divorce case. We disagree.

■■■■ Here, the district court found that the pending divorce implicated important state issues regarding the resolution of domestic disputes. The court further found that although the Ohio courts provide an adequate opportunity for Kelm to present his constitutional challenges, he has declined to do so. We review *de novo* a district court's decision to abstain under *Younger*. *See Mann v. Conlin*, 22 F.3d 100 (6th Cir.1994). As discussed below, the district court correctly dismissed on the basis of the *Younger* doctrine.

In *Younger v. Harris*, the Supreme Court required that a federal court abstain from enjoining a pending state criminal proceeding. In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, the Court applied *Younger* "to non-criminal judicial proceed-ings when important state interests are involved." 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (citations omitted). Later, the Court extended the *Younger* principles to state civil proceedings. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17, 107 S.Ct. 1519, 1529, 95 L.Ed.2d 1 (1987). In *Pennzoil*, the Court held that federal courts must abstain from hearing challenges to pending state proceedings where the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts. *Id.*

Interpreting the above authorities, we have held that *Younger* requires federal courts to abstain where: (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir.1989). Applying these criteria to this case, *Younger* abstention was proper.

### 1. A State Proceeding was Pending

First, we have held that "if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied." *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir.1991), *cert. denied*, 502 U.S. 812, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991). Here it is undisputed that the underlying divorce case was pending at the time he filed his federal action. Thus, the first element of *Younger* is satisfied.

### 2. The State Proceedings Involved Important State Interests

■■■■ Next, Kelm does not specifically argue that the state proceedings do not involve important state interests. He instead argues first, that *Younger* does not apply to civil rights actions and second, that because the challenged pre-judgment statutes do not affect the merits of the underlying divorce case they do not *per se* involve important state interests. First, *Younger* was a civil rights action and we have consistently extended its principles to actions filed pursuant to § 1983. *See, e.g. Mann*, at 104–05. Further, al-

though the challenged procedures are "pre-judgment," Rule 75(H) allocates property and child custody during the pendency of divorce actions, and § 3113.31 offers protection from domestic violence. Ohio has great state interests in regulating domestic violence[6] and in protecting property from both parties to a pending divorce. These traditional domestic relations issues qualify as important state issues under the second element of *Younger*. In fact, we recently affirmed a decision to abstain where the underlying issues involved domestic relations because domestic relations proceedings involve "paramount" state interests. *Id.*

Further, the Supreme Court recently outlined policy considerations supporting exclusive state jurisdiction over divorce matters. *See Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). In *Ankenbrandt*, although the Court narrowed the scope of the traditional "domestic relations exception," the Court did not overrule its prior decisions holding that domestic relations is "a traditional area of state concern." *See, e.g. Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979). In fact, the *Ankenbrandt* Court noted the "special proficiency developed by state tribunals over the past century and a half in handling the issues *that arise in the granting of such decrees.*" —— U.S. at ——, 112 S.Ct. at 2215 (emphasis added). Here, the challenged statutes affect the underlying divorce and involve important state interests thus satisfying the second *Younger* criteria.

### 3. The State Courts Provide an Adequate Opportunity to Raise Constitutional Claims

Finally, Kelm argues the Ohio courts cannot provide an adequate opportunity to raise his constitutional claims. Kelm alleges he can not challenge the CPO procedures because Amy Kelm withdrew her CPO. He also argues Ohio courts are inadequate because he must wait until the settlement of

the divorce before challenging the validity of the Rule 75(H) restraining orders.

Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff. *Pennzoil,* 481 U.S. at 1, 107 S.Ct. at 1521. In *Pennzoil,* the Court noted because all state court judges are bound by the United States Constitution, federal courts:

cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims.... Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

*Id.* at 15, 107 S.Ct. at 1528. Thus, the plaintiff must prove the inadequacy of the state courts.

The facts in *Pennzoil* resemble those before us. In *Pennzoil*, a party sought relief pursuant to § 1983 alleging Texas proceedings violated the Constitution. The party did not present these claims to the state court. The district court did not abstain and the Court of Appeals affirmed. The Supreme Court reversed finding *Younger* abstention was appropriate. In reversing, the Court noted the significance of Texas' "open court provision" which provides that all courts shall be open, and remedies provided, to all injured persons. Based on Texas' open courts provision and the plaintiff's failure to attempt to secure relief in the state courts, the Court found the plaintiff did not meet its burden to prove the inadequacy of the state courts.

Similarly, Kelm has failed to prove the inadequacy of the Ohio courts. As was the case in *Pennzoil*, Ohio has an "open courts provision" found in Article 1, § 16 of the Ohio Constitution. Here, the Ohio courts have given us no reason to question their ability or willingness to address Kelm's constitutional questions. Because the Ohio

---

6. In fact, after the 1991 passage of Arkansas' new civil protection act, every state of the United States provides a statutory scheme to protect victims of domestic violence. These statutes reflect the seriousness and pervasiveness of domes-

tic violence. *See National Coalition Against Domestic Violence;* The World Almanac 839 (1989) (noting that in 1989 between three to four million men abused their wives).

courts provide an adequate forum for Kelm's constitutional claims, the third criterion of *Younger* is satisfied. Thus, abstention was proper in this case.

## B. Kelm's Constitutional Challenges

As discussed above, because abstention was proper, we decline to reach the merits of Kelm's challenges to the constitutionality of the Ohio procedures. Similarly, the proper dismissal moots any discussion of the denial of class certification.

## C. Kelm Failed to State a Claim for Damages

Next, we must address Kelm's claim for monetary damages. The Supreme Court has held that where state proceedings can not address a party's claim for monetary relief, abstention is improper for this claim. *See Deakins v. Monaghan,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) ("the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceedings"). In *Litteral v. Bach,* we applied *Deakins* and held that a district court erred by dismissing a money damages claim on abstention grounds. 869 F.2d 297, 298 (6th Cir.1989). Here, although the district court dismissed the entire case on abstention grounds, the district court did not err because, as discussed below, Kelm failed to state a viable claim for damages.

Kelm sought damages pursuant to § 1983 for the service and execution of the April 12 CPO which, according to Kelm, constituted a breach of the peace and a wrongful arrest thus depriving him of liberty and property without due process of law. Because Kelm specifically dismissed defendants Parkhurst and Weber from his damages claim, we must examine whether he stated a viable claim against the remaining defendants—the seven Columbus police officers who served and executed the CPO, and his wife, Amy Kelm.

### 1. Kelm's Claim Against the Columbus Police Officers

▋ First, assuming the validity of Kelm's allegations, the Columbus police officers are nonetheless protected by qualified immunity. Public policy and well established law grant qualified immunity to those government officials who perform discretionary functions and whose conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 808, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

▋ Clearly, citizens must be afforded due process before a deprivation of life, liberty or property. Here, however, when the officers executed the CPO, § 3113.31 was constitutional and its procedures were presumed adequate. Thus, there was no "clearly established" law with which the officers failed to comply. Instead, the officers rightfully executed a CPO pursuant to a presumably constitutional statute. The officers, therefore, are entitled to qualified immunity and Kelm's damages claim against them must fail.

### 2. Kelm's Claim Against Amy Kelm

Although Kelm never specifically included Amy Kelm within his damages claim, he alleged that she "invoked the jurisdiction of the domestic relations court in obtaining a CPO through perjury, [and] notified police officers to enforce it through material misstatements about prior service and an immediate threat of violence." Construing this complaint broadly, we read these allegations as an attempt to seek damages from Amy Kelm.

▋ Kelm correctly notes that in some instances § 1983 extends to private parties. To establish a viable claim under § 1983, however, Kelm must prove first that Amy Kelm deprived him of a guaranteed right under color of the challenged statute, and second that her actions were properly attributable to the state, i.e. that she qualified as a

422

state actor. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). Here, although Amy Kelm utilized a state statute, Kelm can not prove that she qualifies as a state actor.

In *Lugar v. Edmondson Oil Co.,* the Court found that private parties can be deemed to be acting under the color of state law when acting in conjunction with state officials in garnishment or attachment proceedings. 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The Court further noted, however, that even where a private party utilizes an allegedly unconstitutional state statute, courts must focus not on the terms of the statute but on the character of the defendants to the § 1983 suit. *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754–55. The Court explained that "[a]ction by a private party pursuant to this statute, without something more, was not sufficient to justify a characterization of that party as a 'state actor.'" *Id.*

█ Whether a party qualifies as a "state actor" varies with the circumstances of each case. Thus, the Court has articulated several tests to be used in different contexts. *See, e.g., Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) ("public function" test); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) ("state compulsion" test); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970) ("nexus" test); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("joint action test" for cases of prejudgment attachments). Even when we stretch the above tests to their outer limits, Amy Kelm does not qualify as a state actor. Thus, Kelm's damage claim against her must fail. We, therefore, *sua sponte* dismiss Kelm's damage claim for failure to state a claim.

### III. Conclusion

For the reasons stated above, we **AFFIRM** the decision of the Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, dismissing Kelm's claims for injunctive relief on absten-

tion grounds, and we *sua sponte* dismiss Kelm's remaining claim for monetary relief for failure to state a claim.

BATCHELDER, Circuit Judge, concurring in part and dissenting in part.

While I agree that abstention from adjudicating Russell Kelm's equitable claims is proper under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), my analysis of the abstention principles differs somewhat from that employed by the majority to reach that result. Also, I agree that dismissal of Kelm's damages claims is not proper in light of *Deakins v. Monaghan,* 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), but I respectfully dissent from the majority's decision to address the damages claims on the merits. I therefore write separately.

### I.

The district court in this case found *Younger* abstention applicable to Kelm's constitutional claims for injunctive relief. An appeals court reviews the decision to abstain *de novo. Traughber v. Beauchane,* 760 F.2d 673, 676 (6th Cir.1985).

In *Younger,* the Supreme Court refused to enjoin a state prosecution under the California Criminal Syndicalism Act for the purpose of determining that statute's federal constitutionality. In so doing, the Court created judicial precedent for a fundamental policy against federal court interference with state court proceedings. *Younger,* 401 U.S. at 43, 91 S.Ct. at 750. The Court grounded this policy in notions of equity, comity, and federalism. The equity component counsels abstention "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44, 91 S.Ct. at 750. Comity reflects respect for state judicial institutions. *Id.* Similarly, federalism requires sensitivity to the states' prerogative to protect primarily state interests. *Id.; see also Zalman v. Armstrong,* 802 F.2d 199, 201–02 (6th Cir. 1986).

*Younger* has been extended to some civil contexts. *See, e.g., Pennzoil Co. v. Texaco,*

*Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (state suit for tortious interference with contract); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (state administrative agency proceeding); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil suit involving state nuisance statute). In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court defined the analysis for determining when to abstain. First, is there a pending state proceeding? Second, does the proceeding implicate important state interests? Third, is there an adequate opportunity to raise constitutional challenges in the state proceeding? If the answer to each of these questions is yes, the federal court must abstain. *Id.* at 432, 102 S.Ct. at 2521.[1]

### A.

At the time Kelm filed this federal action, the state divorce proceeding was pending. This satisfies the first prong of the *Middlesex* inquiry. *See, e.g., Kenner v. Morris,* 600 F.2d 22, 24 (6th Cir.1979) (finding abstention appropriate where alimony proceeding pending). Whether the state divorce proceeding is pending now is irrelevant for purposes of the abstention analysis. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 17 n. 16, 107 S.Ct. 1519, 1529 n. 16, 95 L.Ed.2d 1 (1987) (finding state proceeding to satisfy *Middlesex* test even though state court denied rehearing due to procedural default); *Zalman,* 802 F.2d at 202–05.

### B.

The state divorce proceeding fulfills the second prong of the *Middlesex* inquiry. It is well-recognized that the area of domestic relations is primarily a state interest. *See Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979) (abstaining

in case involving *ex parte* temporary child custody order); *Parker v. Turner,* 626 F.2d 1, 4 & n. 7 (6th Cir.1980). Furthermore, a civil protection order is quasi-criminal in nature, making the policy of *Younger* directly apt. Therefore, the state proceeding involves Ohio's vital interest in the ordering of divorcing parties' affairs and the prevention of domestic violence.

While I find the majority's use of *Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), misleading, I agree that *Ankenbrandt* does not hinder the conclusion that *Younger* abstention is proper as to Kelm's equitable claims. *Ankenbrandt* involved a tort suit brought in federal court by a citizen of Missouri against her former husband and his female companion, both citizens of Louisiana. The plaintiff sought monetary damages for the defendants' alleged abuse of her children, whose father is the plaintiff's ex-husband. The district court dismissed the case on two grounds, abstention and the domestic relations exception to federal diversity jurisdiction, and the court of appeals affirmed in an unpublished opinion. *Id.* at ——, 112 S.Ct. at 2209.

In reversing the lower courts, the Supreme Court confirmed the vitality of the domestic relations exception to federal diversity jurisdiction, but circumscribed the exception's application. *Id.* at —— – ——, 112 S.Ct. at 2213–15. While some language in the opinion suggests that the exception is limited to suits requesting the issuance of a divorce, alimony, or child custody decree, the Court's discussion of abstention, which is a doctrine distinct from the question of jurisdiction, does not rule out the relevance of abstention principles in cases where the domestic relations exception is inapplicable. *Id.* at —— – ——, 112 S.Ct. at 2215–16. Therefore, *Ankenbrandt* does not speak to the issue of whether the second *Younger* criterion is satisfied in this case.

---

1. Citing *Federal Express Corp. v. Tennessee Public Service Comm'n,* 925 F.2d 962 (6th Cir.), *cert. denied,* 502 U.S. 812, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991), and *Nilsson v. Ruppert, Bronson & Chicarelli Co.,* 888 F.2d 452 (6th Cir.1989), the majority credits the Sixth Circuit with the derivation of this test. But this three-pronged test is not merely Sixth Circuit authority. Rather, it is explicitly laid out by the Supreme Court in *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. In *Nilsson* and *Federal Express,* the Sixth Circuit merely followed Supreme Court precedent, as we are bound to do.

The majority also responds to Kelm's broad argument that *Younger* abstention does not apply to civil rights cases. The majority writes, "*Younger* was a civil rights action and we have consistently extended its principles to actions filed pursuant to § 1983." *See* op. at 419. I think it is important to clarify this statement. The phrase "civil rights action" has come to mean an action filed under one of the civil rights statutes. *Younger* involved a facial challenge to a state statute on First Amendment grounds, not a suit against a government official under a civil rights statute. Therefore, *Younger* was a civil rights action in the sense that the First Amendment creates and protects civil rights. That said, I agree with the majority that *Younger* properly extends to federal suits under the civil rights statutes. *See, e.g., Pennzoil*, 481 U.S. 1, 107 S.Ct. 1519 (action under 42 U.S.C. § 1983); *Mann v. Conlin*, 22 F.3d 100 (6th Cir.) (same), *cert. denied*, —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994).

### C.

The third prong of the abstention analysis focuses on the adequacy of the state court proceeding to entertain the constitutional challenges. Kelm has twice attempted to challenge the constitutionality of Ohio Revised Code § 3313.31 in state court. First, although the CPO had been granted in a separate domestic violence case, Kelm filed a notice of appeal in the pending divorce action, seeking to contest the granting of the CPO. The state court of appeals dismissed the appeal, finding that the order granting the CPO had been filed in the divorce action as well as the domestic violence action but was not a final, appealable order. *See In re Kelm*, No. 90AP–623 (Franklin Cty.Ct.App. Mar. 26, 1991). Then Kelm obtained the dismissal of Amy Kelm's domestic violence case, which had inadvertently remained pending despite the parties' settlement. Kelm filed an appeal of that dismissal, again seeking an opportunity to dispute the constitutionality of the Ohio CPO statute. In *Kelm v. Kelm*, No. 92AP–1683, 1993 WL 220881 (Franklin Cty.Ct.App. June 10, 1993), *dismissed*, 67 Ohio St.3d 1510, 622 N.E.2d 658 (1993), the state court of appeals refused

to reach the merits of the claim, not due to unwillingness or lack of authority, but due to the mootness of Kelm's claims. The court reasoned that a party may not appeal a judgment that was granted at his request. *Id.*

Kelm has not attempted to challenge the constitutionality of Ohio Rule 75(H) in state court. Under such circumstances, the state court proceedings are *presumed* adequate:

> [W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987). Kelm contends, however, that filing an appeal prior to the resolution of the divorce case would be fruitless because the TROs are, like the CPO, merely interlocutory in nature. Kelm therefore insists the state courts are inadequate because, as proven by his two attempts at appeal, the state courts afford no opportunity for review of the constitutionality of CPOs and TROs until the resolution of the divorce case.

Kelm's argument is not persuasive. Kelm raised this issue at oral argument only, and he has not offered "unambiguous authority" for the proposition that the delay entailed in applying the finality doctrine denies him an adequate opportunity for review and redress. Indeed, case law suggests that, notwithstanding the delay inherent in the finality doctrine, an opportunity to raise constitutional claims is adequate even though such opportunity arises only upon appellate review. In *Watts v. Burkhart*, 854 F.2d 839 (6th Cir.1988), a case later heard en banc on other grounds, the plaintiff contended that the opportunity to raise constitutional claims was inadequate because the administrative Board of Medical Examiners had concluded his claims were not within the Board's scope of review. This Court found that the opportunity for judicial review of the administrative proceeding was not inadequate for purposes of abstention analysis: "[W]e are unpersuaded that Watts will not have an adequate opportunity to

raise his constitutional claims at some point in the state proceedings." *Id.* at 848. This Court's decision was well-grounded in Supreme Court authority involving analogous situations. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629, 106 S.Ct. 2718, 2723–24, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 436 & n. 15, 102 S.Ct. 2515, 2523–24 & n. 15, 73 L.Ed.2d 116 (1982) (noting that judicial review of the administrative proceeding was available and adequate even where interlocutory review had been denied).

Moreover, there is no indication in the record that delay will harm Kelm's interests. The CPO has been withdrawn; therefore, even if the imposition of the CPO caused Kelm constitutional injury, which I do not concede, no further injury can accrue. Under Rule 75(H), Kelm may petition for vacation or modification of the TRO at any time. Presumably, one basis for a motion to vacate is the alleged unconstitutionality of the rule that authorized the TROs. Indeed, Kelm received review of the TROs several times. Thus, the postponement of the hearing on the constitutional claims until issuance of a final order does not render the state proceedings inadequate for purposes of *Younger* abstention.[2]

Accordingly, the district court properly abstained from adjudicating Kelm's claims for equitable relief. *See Mann v. Conlin*, 22 F.3d 100, 105–06 (6th Cir.1994) (applying *Younger* abstention under similar circumstances).

## II.

The district court also abstained from adjudicating Kelm's claims for monetary relief under 42 U.S.C. § 1983. Citing *Deakins v. Monaghan*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), and *Litteral v. Bach*, 869 F.2d 297 (6th Cir.1989), the majority independently addresses Kelm's claim for monetary damages under § 1983, because abstention is improper "where [pending] state proceedings can not address a party's claim for monetary relief...." *See* op. at 421. The majority then affords qualified immunity to the Columbus police officers and finds the state action requirement lacking with respect to Amy Kelm.[3] For these reasons, the majority dismisses the § 1983 damages claims for failure to state a claim.

I agree with the majority that *Deakins* and *Litteral* bar dismissal of Kelm's monetary claims on abstention grounds. Ohio courts of common pleas may entertain actions against state actors based on 42 U.S.C. § 1983. *Schwarz v. Board of Trustees*, 31 Ohio St.3d 267, 510 N.E.2d 808 (1987); *Jackson v. Kurtz*, 65 Ohio App.2d 152, 416 N.E.2d 1064 (1979). Russell Kelm filed the divorce action in the domestic relations division of the court of common pleas for Franklin County. I acknowledge that Ohio law gives domestic relations judges the same *capacity* to receive jurisdiction as the common pleas judges, *see* Ohio Rev.Code Ann. § 2301.03(A) (Anderson

---

2. In assessing the adequacy of the state proceedings, the majority observes, "The facts in *Pennzoil* resemble those before us." *See* op. at 420. I think this statement is misleading. *Pennzoil* did not involve a civil protection or temporary restraining order in the context of a divorce action. Far from it, *Pennzoil* involved a state suit Pennzoil brought against Texaco for tortious interference with Pennzoil's agreement to purchase stock from Getty Oil Co. *Pennzoil*, 481 U.S. at 4, 107 S.Ct. at 1522. After the jury verdict against Texaco, but before entry of judgment, Texaco filed a federal suit under 42 U.S.C. § 1983 alleging that the Texas procedures for enforcement of a judgment violated Texaco's constitutional rights. *Id.* at 6–7, 107 S.Ct. at 1523–24.

The relevant similarity is not between the "facts," but between Texaco's and Kelm's procedural failure to present constitutional claims to the state court rather than filing a § 1983 action in federal court. Even this similarity is imperfect, however, because Texaco failed to raise *any* of its constitutional claims in state court, *see id.* at 6, 17, 107 S.Ct. at 1523, 1529, while Kelm raised some (those respecting the CPO) and not others (those respecting the TROs).

3. The majority does not address the § 1983 liability of defendants Parkhurst and Weber because "Kelm specifically dismissed defendants Parkhurst and Weber from his damages claim...." Op. at 421. This characterization of Kelm's actions with respect to Parkhurst and Weber is not quite accurate. Rather, Kelm stated in a memorandum to the district court that "there was no intention in the Complaint to include [Parkhurst and Weber] within the scope of" the damages claim.

Supp.1992); however, the parties have cited to this Court no Ohio statute, and I am aware of none, actually granting Ohio domestic relations courts jurisdiction over § 1983 claims for monetary damages. Similarly, the parties have not identified any Ohio case in which a domestic relations court in fact exercised such jurisdiction.

While the majority's application of *Deakins* and *Litteral* is proper, I find the remainder of the majority's analysis inadvisable. At the time the district court ordered dismissal on abstention grounds, the defendants' motions for summary judgment were pending. Because the district court abstained from adjudicating Kelm's damages claims, the district court never issued a ruling on the claims' merits. Upon review of the record, I cannot say with conviction that Kelm is unable to allege any set of facts which will state a claim against the police officers. Similarly, under *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), it is conceivable that Kelm states a claim against Amy Kelm based on her invocation of state procedures for securing a CPO and the involvement of the officers in executing that order. Also, the question arises whether the defendants are entitled to summary judgment based on qualified immunity or an analogous good faith defense. *See id.* at 942 n. 23, 102 S.Ct. at 2756 n. 23. Under the facts of this case, the district court, not this Court, should determine in the first instance whether Kelm's damages claims fail on the pleadings or on motion for summary judgment. Accordingly, I would remand Kelm's damages claims to the district court for consideration.